295 P.2d 377

**STATE of Arizona, Appellee,**

v.

**Willie Mae BURNETTS, Appellant.**

No. 1067.

Supreme Court of Arizona.

April 3, 1956.

Arthur M. Johnson, Phoenix, for appellant.

Robert Morrison, Atty. Gen., for appellee.

UDALL, Justice.

Defendant Willie Mae Burnetts was charged with the crime of manslaughter, a felony. She plead not guilty and was thereafter placed on trial and convicted by a jury of the offense charged. After denying a motion for new trial the court sentenced the defendant to serve a term of not less than two nor more than four years in the State Penitentiary.

The sole question presented on this appeal is whether the lower court erred in denying the motion for new trial. Defendant relies upon the following "incident"—which occurred approximately one

hour after the jury had retired to deliberate upon their verdict—as being so prejudicial as to require a reversal. We set forth the trial judge's version of the incident, viz.:

The Court:

"At approximately 6:15 on the date the matter went to the jury, the bailiff, Mrs. Gibbons, in response to a call from the jury room came to my chambers and stated that the jurors desired to see Exhibit A. Shortly prior thereto this office had been informed by counsel for the defendant that they were leaving the telephone (sic) for dinner.

"I took it upon myself to go to the door of the jury room and stated to the jury that Exhibit Á, the transcript of the preliminary hearing, had been withdrawn.

"A male member of the jury, whose identity I cannot recall, who was at the far end of the jury room next to the window, stated, 'We have a question: If we find the defendant guilty, can we write on the verdict that we recommend leniency?' Whereupon I stated that it could not be written on the verdict, but that an oral announcement could be made when the verdict was found, in Court.

"This statement was made in the presence of the entire jury since all of the jurors were between me and the juror who had asked the question.

"This happened at approximately 6:15. This jury did not reach a verdict until approximately 10:15 that same evening. I believe that is substantially the facts that you have with slight modifications."

It is further conceded that no court reporter nor counsel for either the state or defendant were there present or knew anything about the occurrence until later. It seems that the defendant was then sitting across the hall some ten feet away from the door of the jury room but there is no showing she was aware of what was taking place.

It further appears from the minutes that at the time the verdict was received and recorded, the foreman of the jury "* * states that it is the unanimous recommendation of the jury that leniency be shown the defendant". Counsel for defendant then requested that the jury be polled, which was done.

In response to defendant's (appellant's) opening brief the Attorney General, in person, with commendable frankness has confessed error, stating:

"After reviewing all the authorities the State can come to only one conclusion: that it is reversible error for the trial judge in a criminal case to communicate with members of the jury after it has retired to deliberate, unless such communication is done in

open court in the presence of defendant and counsel."

This statement may be a little broad but is, generally, in line with the prevailing rule on the subject. There can be no question but that in the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. Rule 281, Rules Crim.Proc.1956 (formerly rule No. 328, § 44–1907, A.C.A. 1939), provides:

"After the jurors have retired to consider their verdict, if they desire additional instruction upon any point of law arising in the action or to have any testimony about which they are in doubt or disagreement read to them, they shall upon their request be conducted into the courtroom by the officer who has them in charge and the court shall give them such additional instruction or shall order such testimony read to them. *Such instruction may be given and such testimony read only after notice to the county attorney and counsel for the defendant."* (Emphasis supplied.)

In 53 Am.Jur., Trial, section 904, this fine statement appears:

" * * * After submission of the cause, the judge may not enter the jury room and there, in the absence of the parties ·and their counsel, communicate with the jurors or advise them of their duties; * * * A violation of this rule in a criminal case has been held to deprive the accused of a constitutional right, and in any case is regarded as ground for a new trial or as constituting reversible error, irrespective, according to many courts, of the question of actual prejudice resulting therefrom and provided, according to others, the misconduct is not harmless. If the necessity for a conference between the court and jury arises during deliberations, the jury should be brought into court."

See also, 23 C.J.S., Criminal Law, § 1449 d, p. 1188. There is an excellent annotation on the whole matter found in 41 A.L. R.2d at page 227 et seq., entitled "Prejudicial effect, in criminal cases, of communications between court officials or attendants and jurors". Cf. Southern Pacific Railroad Co. v. Mitchell, 80 Ariz. 50, 292 P.2d 827. Out of the numerous cases we have read on the subject, the ones listed below are most nearly in point with the facts here presented. Convictions in all were reversed because of the misconduct of the trial judge in going into the jury room and answering jurors' queries or otherwise communicating with them relative to the case. See, Bell v. State, 223 Ark. 304, 265 S.W.2d 709; Graham v. State, 73 Okl.Cr. 337, 121 P.2d 308; Havenor v. State, 125 Wis. 444, 104 N.W. 116; State v. Murphy, 17 N.D. 48, 115 N.W. 84, 88, 17 L.R.A.,N.S., 609. We find that in prac-

tically all of the reported cases appellate courts properly regard communications between the trial judge and jurors, relative to the trial, as of a more serious nature and more likely to have a prejudicial effect than communications between other court officials or attendants and jurors. This for the reason that the jurors look to the judge as their impartial authority and guide in their deliberations. In a criminal case there is a tendency to afford the defendant even greater protection than in civil cases. Under facts such as are shown here, where the communication concerned the case and not merely extraneous matters, we are of the opinion that the defendant is not required to show actual prejudice.

■ It should be noted that defendant had previously been tried for the same offense and a mistrial declared after twenty-three hours of deliberation because the jury was unable to agree upon a verdict. The fact that the jurors in the instant trial were concerned with the punishment that might be meted out—which after all was none of their concern—is a good indication that an agreement might not have been reached in the instant trial had they not had the court's answer that an oral recommendation of mercy would later be in order. As it was, they deliberated for four more hours, and it is obvious from the statement of the foreman when the verdict was returned that they were hopeful the court would listen to their recommendation for mercy. A defendant is entitled to a fair trial and to a verdict of a jury upon the evidence, without consideration of the punishment inflicted.

■ It is impossible to promote confidence in the administration of justice unless the jury is kept free from outside influences. In the instant case, if the jurors desired a question answered or further instructions, the proper way to have handled the matter would have been to bring them back into open court with its attendant safeguards.

We realize and know there was no intention on the part of the learned trial judge to in any manner influence the jury. His high standing and upright character, both as a man and as a judge, are well known to the members of this court, hence we safely assume the communication with the jury was not prompted by any improper motives. It was an unfortunate occurrence, but we feel that it would establish a dangerous precedent under the admitted facts not to reverse for a new trial.

Judgment of conviction and order denying motion for new trial are reversed with directions to grant defendant a new trial.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.