568 P.2d 1032

**The STATE of Arizona, Appellee,**

v.

**John LAMB, Appellant.**

**No. 3580.**

Supreme Court of Arizona, In Banc.

June 13, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Schmal & Wollschlager, by Gary G. Wollschlager, Phoenix, for appellant.

CAMERON, Chief Justice.

John William Lamb was found guilty of armed robbery, A.R.S. §§ 13–641 and 643, following a jury trial. He was sentenced to the Arizona State Prison for a period of not less than thirty years nor more than life. He appeals from that conviction.

These questions are presented:

1. Was the search of the defendant and the resulting seizure of certain evidence illegal?

2. Was it error not to excuse a juror who indicated during trial that she might improperly emphasize the testimony of a prosecution witness?

3. Was the defendant denied a proper Dessureault hearing?

4. Did the State's failure to produce the brown coat constitute a violation of due process?

5. Was the defendant prejudiced by the handcuff incident at trial?
6. Did the trial court improperly communicate with the jury during deliberation?
7. Was defendant denied effective assistance of counsel?

On the afternoon of 24 October 1975, Sun Drug, located at 5050 South Central, Phoenix, Arizona, was robbed. Mr. Romeo Root, owner of the drugstore, described the perpetrator as a white male, 35 years, 5'10" tall, dark brown or black hair, with a pocked face and sideburns. He also indicated that the suspect wore levis and a brown coat and carried a revolver. A large quantity of narcotic drugs and $400 in cash, $200 in ones and $200 in fives, were taken during the robbery.

At approximately 6:30 p. m. that same day, Officer Donald Pinney went to the Madison Hotel, 35 East Madison, to respond to a radio dispatched call concerning a man with a gun. Upon arriving at the hotel, Officer Pinney and Officer Warren Friederman were met on the street by the desk clerk of the hotel who they recognized. The clerk advised them that the girl in Room 21 had come down to the desk and told him that there was a man in the room with a gun and some narcotics or drugs. The officers proceeded to Room 21 and found the door open. Officer Pinney noticed the defendant lying on the bed and a woman known to him as Georgia Martinez sitting in a chair at the foot of the bed. Officer Pinney knew the woman as a prostitute who worked in the downtown area. Standing in the open door, Officer Pinney asked if there was anyone there with a gun and if there was any problem. The defendant responded that there was no gun and no problem. At that point, Georgia Martinez, whom Officer Pinney described as looking "apprehensive," stood and walked toward the door. Officer Pinney motioned her out into the hall and asked her about the report. She confirmed that she had called the police, and stated that the defendant told her he had robbed the drugstore and that he had money, a gun, and some drugs and wanted to "get high." Officer Pinney asked her if she knew where the gun was. She replied that she didn't, but that it might be under the bed or in the closet. The two of them reentered the room and Officer Pinney asked the defendant to stand. When he did, Officer Pinney noticed that the defendant's pockets were bulging. Pinney told the defendant to put his hands against the wall and conducted a pat-down search. Feeling a hard object with a square feel to it, Officer Pinney reached into the defendant's pocket and removed a small cardboard cigar box. The box contained a large quantity of blue and white pills wrapped in cellophane. Officer Pinney advised the defendant of his rights and told him that he was under arrest for possession of dangerous drugs. He then proceeded to conduct a full search of the defendant in the course of which he discovered additional drugs and currency: $2.58 in change, 27 five dollar bills, 1 ten dollar bill, and 50 one dollar bills.

Immediately after defendant's arrest and the search, additional officers arrived on the scene. One of the officers reminded Officer Pinney of an earlier police radio broadcast concerning the Sun Drug robbery. Officer Pinney testified that he recalled the broadcast and that he realized, once his memory had been refreshed, that the radio broadcast description of the suspect matched the defendant. At this time, Officer Friederman found a .357 magnum revolver in the common hallway ten feet from the door to Room 21. A man's brown coat found in the room was also seized.

## SEARCH AND SEIZURE

Prior to trial, defendant moved to suppress the drugs, the currency and the gun. A suppression hearing was held and defendant's motion was denied. At trial, the drugs themselves were not introduced, however, testimony as to their seizure was presented as was testimony by the drugstore owner, Mr. Root, that they did not come from his store. Both the gun and photographs of the currency were introduced.

On appeal, defendant contends that the original pat-down search was illegal. From this he argues, based on the "fruit of the poisonous tree doctrine," *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that all of the evidence obtained as a result of the subsequent search including the additional drugs, the currency and the gun, should have been suppressed.

Based on the information from the room clerk and from Georgia Martinez, Officer Pinney had an obligation to investigate further. He testified that the defendant appeared to be extremely intoxicated and that that fact, plus the allegation that the defendant had a gun, caused him to be concerned for his own safety and that of the others present. His intent upon confronting the defendant was to ascertain whether or not he had a gun and to question him about the alleged robbery. Noticing the defendant's bulging pockets, he was justified in conducting a pat-down search for weapons. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Nichols*, 26 Ariz.App. 455, 549 P.2d 235 (1976). As stated by the court in *Terry, supra:*

> "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances, would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

At the suppression hearing, Officer Pinney testified that he believed the hard, square object in the defendant's pocket could have been the butt of a gun. Thus, he was also justified in retrieving that object. However, upon discovering that it was merely a cigar box and not a gun, the officer may well have exceeded the permissible scope of a *Terry* search in opening the box, absent a reasonable belief that it contained a weapon. *Terry v. Ohio*, supra; *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *People v. Mosher*, 1 Cal.3d 379, 82 Cal.Rptr. 379, 461

P.2d 659 (1969); *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975); *Amacher v. Superior Court*, 1 Cal. App.3d 150, 81 Cal.Rptr. 558 (1969) [search of a closed Marlboro flip-top box]; *State v. Washington*, 82 N.M. 284, 480 P.2d 174 (Ct. of App.1971). As stated by the court in *Terry, supra* :

> "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. (citation omitted) Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *" 392 U.S. at 25–26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908.

The search of the cigar box standing alone is not important to a resolution of this matter. The search is important because it is the basis upon which the defendant was initially arrested and the currency discovered. Conceding, however, the illegality of the search of the cigar box, we think the additional drugs, the currency and the gun nonetheless need not be suppressed.

In *Wong Sun v. United States*, supra, the court, citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), acknowledged that the exclusionary rule has no application to evidence derived from an "independent source." It also noted that the connection between the lawless police conduct and the discovery of the challenged evidence may become "so attenuated as to dissipate the taint," citing *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). The court then stated:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary

taint.' Maguire, Evidence of Guilt, 221 (1959)." 371 U.S. at 487–488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

■ Reasoning from this language, a number of courts have held that evidence obtained as a result of an unlawful search need not be suppressed where, in the normal course of the police investigation and absent the illicit conduct, the evidence would have been discovered anyway. *United States ex rel. Owens v. Twomey*, 508 F.2d 858 (7th Cir. 1974); *United States v. Seohnlein*, 423 F.2d 1051 (4th Cir.), cert. den. 399 U.S. 913, 90 S.Ct. 2215, 26 L.Ed.2d 570 (1970); *Wayne v. United States*, 318 F.2d 205 cert. den. 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963); *People v. Fitzpatrick*, 32 N.Y.2d 499, 346 N.Y.S.2d 793, 300 N.E.2d 139, cert. den. 414 U.S. 1050, 94 S.Ct. 554, 38 L.Ed.2d 338 (1973); Anno., 43 A.L.R.3d 385, 404; see also *Lockridge v. Superior Court of Los Angeles County*, 3 Cal.3d 166, 89 Cal.Rptr. 731, 474 P.2d 683 (1970), cert. den. 402 U.S. 910, 91 S.Ct. 1387, 28 L.Ed.2d 652 (1971).

■ The statement of the room clerk and Georgia Martinez that the subject had a gun and some narcotics or drugs was sufficient to warrant further investigation. In fact, the officer would have been derelict in his duty not to have done so. In the course of that investigation, the officer remembered that the defendant matched the description of the man who robbed Sun Drug. In addition, the gun was discovered in the hallway and the brown coat was found in the room.

This evidence came to light independent of the search of the cigar box and in the normal course of the investigation. It corroborated Georgia Martinez' statement that the defendant had said that he had robbed a drugstore and provided sufficient probable cause to arrest the defendant and to conduct a search incident to that arrest. Such a search would have revealed the additional drugs and the currency. Since the drugs themselves were not introduced and Mr. Root testified that none of the drugs found on defendant came from his drugstore, it is not significant that the court did not distinguish between the drugs found in the cigar box and the additional drugs found in defendant's pockets in denying the motion to suppress.

Thus, we believe the arrest for the robbery itself was inevitable as was a search incident to that arrest. See *State v. Tillery*, 107 Ariz. 34, 481 P.2d 271, cert. den. 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971). The additional drugs and currency need not be suppressed.

■ As for the gun, its suppression would not be required in any event. It was found in the common hallway by Officer Friederman at approximately the same time as the arrest. The gun, having been left in the hallway open to the public, was abandoned property and the "search" which resulted in its discovery did not violate the defendant's Fourth Amendment rights. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972). We find no error.

## COURT'S FAILURE TO EXCUSE A JUROR

■ At trial, the victim, Mr. Root, positively identified the defendant. While Mr. Root was testifying, Mrs. Ethel Free, a juror, realized that he was a Mormon. She was able to tell this by looking at his clothing. Mrs. Free was also Mormon and was concerned that her opinion as to Mr. Root's credibility might be affected by the fact that they were of the same religion. At the recess following Mr. Root's testimony, Mrs. Free indicated her concern about this matter to the bailiff. The trial judge called Mrs. Free into his chambers and gave both counsel an opportunity to question her. She was then instructed to rejoin the other jurors and admonished not to discuss the matter with anyone. During this questioning, Mrs. Free indicated that while she was concerned that she might be influenced, she would do her best not to allow her feelings to affect her opinion as to Mr. Root's credibility.

Defendant moved that she be disqualified. The court, noting that there was only one alternate juror, took the defendant's motion under advisement.

Following the testimony of Jan Root, who was the victim's daughter and also identified the defendant at trial, defendant's attorney was given another opportunity to question Mrs. Free in chambers. At that time, Mrs. Free indicated that she did not have the same problem as to Miss Root and further that she "felt better" about the matter and would not have a problem reaching a verdict.

At the close of the case, the court granted the defendant's motion disqualifying Mrs. Free and reducing the jury to the necessary twelve persons.

On appeal, defendant contends that the trial court erred in not excusing Mrs. Free for cause when the issue was first raised. We do not agree. In light of the facts presented and particularly the admonition to Mrs. Free not to discuss the matter with anyone, including her fellow-jurors, and her subsequent disqualification prior to submission of the case to the jury, the court's handling of the matter was both reasonable and fair. We find no error.

## DESSUREAULT HEARING

Defendant contends that the failure of a police officer to admit his presence at the preliminary hearing denied him his right to a full suppression hearing.

Prior to trial, defendant moved to suppress any in-court identification by Mr. Root or Jan Root. This motion was based on two grounds; an alleged unduly suggestive photo lineup and alleged improper conduct at the preliminary hearing.

A hearing on defendant's motion was held on 8 April. At that hearing, defendant testified that Officer Buckner had approached him at the preliminary hearing, engaged him in a conversation about a robbery in Flagstaff and by such process identified him to the witnesses, Mr. Root and Jan Root, who allegedly overheard the conversation.

Mr. Root testified that while he had seen the defendant through an open door prior to the preliminary hearing, he had never been in the same room with him nor had he overheard any conversation. Jan Root also denied having been in the same room with the defendant or having overheard any conversation. Officer Warren, who transported the defendant to the preliminary hearing, could not recall having seen any police officer speak with the defendant prior to the preliminary hearing.

After questioning Officer Buckner about the photo lineup, defendant's attorney asked him if he had been present at the preliminary hearing. Buckner replied that he had not. Defendant's attorney did not challenge this response and the motion to suppress was denied.

Following a brief recess, the proceedings resumed. Defendant's attorney advised the court that according to the preliminary hearing transcript Officer Buckner had been present at that hearing but had been excused before any testimony was taken. The court accepted the defendant's statement but ruled that that fact would not alter its ruling on the motion to suppress.

 Whether there has been an accurate in-court identification of the defendant, not tainted by prior identification procedures and whether such procedures are fair, are preliminary questions for the trial court. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), cert. den. 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), and the trial court's determination will not be overturned on appeal absent a clear and manifest error. *State v. Milonich*, 111 Ariz. 442, 532 P.2d 504 (1975); *State v. Williams*, 111 Ariz. 175, 526 P.2d 714 (1974). Whether Officer Buckner intentionally misrepresented the facts or had merely forgotten that he was present at the beginning of the preliminary hearing, we can find no error. Both Mr. Root and Jan Root had specifically denied defendant's assertion that Officer Buckner had, by conversation, identified the defendant for them. The other officer present could recall no such conversation. The court's ruling was supported by the evidence presented to it. We find no error.

## PRODUCTION OF THE BROWN COAT

On 11 December 1975, defendant, by motion, requested copies of the photographs used in his lineup. On the omnibus hearing form, defendant checked the box requesting all *Brady* materials. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant's trial commenced on 7 April 1976. The State presented its case in chief on 8 April and the trial was recessed until 13 April. On 12 April, defendant caused a subpoena duces tecum to be issued to the Phoenix Police Department directing it to produce "all items impounded" in connection with this case. When trial resumed the next morning, defendant was advised that the police department did not have the brown coat seized at the time of defendant's arrest and therefore could not produce it. Before the trial resumed, defendant moved for a continuance so that the coat could be produced or, in the alternative, a mistrial. In response to the defendant's motion, the county attorney told the court:

> "MR. HUFFMAN: Yes, Your Honor, briefly. I would like to just state for the record that the coat was part of the evidence seized in this armed robbery, and it's my understanding from talking with Officer Pinney that he was called to testify in the trial this defendant had in Flagstaff on a similar charge. The defense requested that he bring that coat to Flagstaff and have it introduced in that trial. That's why it's being held up there. The defense is well aware of that, that is why the coat was taken there. There was no request from the defense to have the coat removed from the court file in Flagstaff and have it brought down here."

The defendant did not dispute the county attorney's statement nor did he deny that he was aware that the coat had been taken to Flagstaff at his request and introduced into evidence in that trial. The court denied his motion for a continuance and for a mistrial.

On appeal, defendant alleges that the failure of the Phoenix Police Department to produce "subpoenaed evidence in their possession" constituted wilful suppression of that evidence and denied him a fair trial. In support of this contention, defendant cites *Brady v. Maryland, supra,* and Rule 15.1(a)(7), Arizona Rules of Criminal Procedure (1973).

■ *Brady v. Maryland, supra,* held that the suppression by the prosecution of evidence which is material either to guilt or to punishment violates due process. Rule 15.-1(a)(7) enacts the holding of that case into our Rules of Criminal Procedure, requiring the prosecution to disclose to the defendant within 10 days of the arraignment all material or information which would tend to mitigate or negate guilt or reduce punishment therefor. In the instant case, there was no suppression of evidence by the prosecution; nor was any material or information concealed from the defendant. As established by the record on appeal, defendant was not only aware of the existence of the coat, but had himself had it removed from the custody of the Phoenix Police Department and introduced into evidence in the other trial. Under the circumstances, defendant's assertion that the prosecution's conduct constituted suppression of evidence is without merit.

As for the trial court's refusal to grant the defendant's motion for a continuance, the granting or denial of such a motion is a matter which lies within the sound discretion of the trial judge. *State v. Thornburg,* 111 Ariz. 254, 527 P.2d 762 (1974); *State v. Miller,* 111 Ariz. 321, 529 P.2d 220 (1974). Such a motion is not granted as a matter of right, *State v. Jackson,* 112 Ariz. 149, 539 P.2d 906 (1975), and we will not interfere with the trial court's ruling unless there is a clear abuse of discretion and a showing of prejudice to the defendant. *State v. Jackson, supra.*

## HANDCUFF INCIDENT

■ On the first day of trial, prior to the opening statements, defendant was led past the door of the jury room in handcuffs. The officer in charge of the defendant's custody had neglected to close this door as

is the usual procedure and it would have been possible for the jurors to have seen the defendant while handcuffed. Defendant's motion for a mistrial on the basis of this incident was denied. Defendant asserts he was prejudiced by this incident and as a result denied a fair trial. We do not agree.

Following the incident, defendant sought to have the jury polled to determine whether or not the jurors had seen him. The trial court refused because to have done so would have made the jurors aware that the defendant was handcuffed during transportation; the very fact that the defendant alleged would have prejudiced them against him. However, once the jury had returned its verdict, the court did question the jurors about the incident and none of them indicated that they had seen the defendant in handcuffs. We find no error.

## COMMUNICATION WITH THE JURY

Defendant contends that the trial judge improperly communicated with the jury during their deliberations. He also asserts that the verdict was not returned in open court as required by Rule 23.1(a), Arizona Rules of Criminal Procedure (1973).

On the morning of 15 April 1976, the jury was reconvened and directed to resume its deliberations. The defendant, his counsel who was then acting in an advisory capacity because he had been dismissed by the defendant, and the county attorney, were all present for the reconvening of the jury. Just prior to noon, the following proceedings occurred:

"THE COURT: Let the record show the presence of the defendant, the presence of advisory counsel for the defendant, the presence of State's counsel. Let the record show that the matter proceeded out of the presence of the jury in chambers.

The jury has sent several messages to the Court. The first one was receipted from the bailiff and read as follows: 'Your Honor, We, the Jury, in the case of the State of Arizona versus John Lamb, have reached a verdict.

'However, we have drafted a note to the Court and we are wondering what proper procedure concerning a note to the Court is. Thank you. The Jury.'

"I requested that the bailiff present the note to the Court, and I feel obligated to read it to you before we proceed further. The note which was then presented to the bailiff for presentation to the Court at the request of the Court, read as follows:

'To the Court: In the case of the State of Arizona versus John Lamb, for armed robbery, we, the jury, feel that with the evidence presented, a guilty verdict is just.

'However, as citizens we would also like to make our feelings known for the record regarding the the State's presentation of this case, from a jury deliberation viewpoint. We believe that deliberations could have been shortened considerably, saving the Court's time and the taxpayer's money had the State been more concise and conscientious in their handling and presentation of this case.'

"And its apparently signed by all the jurors.

So apparently the jury has reached a verdict, and I assume the proper procedure would be to take the verdict in open court. Any objection to that?

"MR. HUFFMAN: Not by the State.

"THE COURT: Defense?

"THE DEFENDANT: No."

The proceedings were then resumed in open court. The foreman of the jury reported that a verdict had been reached; the verdict was handed to the court clerk and read by him to the court. The jurors were polled individually at defendant's request. The judge then read both notes into the record again and directed the clerk to file the notes themselves as a part of the permanent record.

 Defendant does not contend that any communications other than those revealed by the record occurred. It is reversible error for a trial judge in a criminal case to communicate with the jurors after they

have retired to deliberate unless the defendant and counsel have been notified and given an opportunity to be present. *State v. Robin*, 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Werring*, 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Burnetts*, 80 Ariz. 208, 295 P.2d 377 (1956). While it may have been preferable in the instant case for the judge to have notified the defendant and counsel upon receipt of the first note, the court's handling of this matter did not prejudice the defendant. Nothing was concealed from the defendant or counsel. Nor, in fact, was there any communication between the judge and the jury out of the presence of counsel other than the judge's direction to the bailiff to accept the jury's note. By contrast, in *State v. Robin, supra,* the court answered the jury's questions dealing with the facts of the case. And in *State v. Werring, supra,* and *State v. Burnetts, supra,* in which we discussed the rule at length, the trial judge went into the jury room, without counsel, and orally responded to the jury's questions about the case.

With regard to the verdict, the trial court, upon advising the parties of the jury's notes, indicated its intention to have the verdict properly returned in open court. Both the county attorney and the defendant agreed that that would be the proper procedure. The jury then reported its verdict and was polled. We find no error.

## EFFECTIVE ASSISTANCE OF COUNSEL

Finally defendant contends that he was denied effective assistance of counsel. At trial following the close of the State's case and partial presentation of defendant's evidence, defendant dismissed his appointed attorney, waived his right to representation and proceeded to represent himself. No objection is raised as to this waiver of counsel. Rather, defendant asserts that he was denied representation in that four different attorneys represented him at various stages of the proceedings.

It is true that defendant was represented by several different attorneys prior to trial. However, these proceedings were not seriously contested. They included a hearing to determine defendant's name, a motion to continue, a discovery motion, and a motion to withdraw. Prior to trial defendant was appointed private counsel who represented him at the suppression hearing and at trial. When defendant dismissed this attorney during the trial, the court reappointed him to act as advisory counsel.

In *State v. Thorne*, 104 Ariz. 392, 453 P.2d 963 (1969), we quoted the following language from *State v. Saiz*, 3 Ariz.App. 223, 413 P.2d 282 (1966) with approval:

"The right of defendant to have a court appointed attorney represent him upon finding that he is indigent and unable to employ same does not give the indigent defendant right to select any attorney he wishes or to abuse the efforts of the court to provide him with competent counsel." 3 Ariz.App. at 225, 413 P.2d at 284.

A review of the record in this case reveals that defendant had competent and effective representation throughout. We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Justice, concurs.

I concur in the result.