139 Ariz. 422 (1984)
678 P.2d 1386
STATE of Arizona, Petitioner,
v.
COCONINO COUNTY SUPERIOR COURT, DIVISION II, and the Honorable Richard K. Mangum, a judge thereof, Respondent Judge, William Carl MAURO, Respondent Real Party in Interest.
No. 17116-SA.
Supreme Court of Arizona, In Banc.
February 28, 1984.
John Verkamp, Coconino County Atty. by Michael G. Prost and Charles D. Adams, Flagstaff, for petitioner.
*423 Aspey, Watkins & Diesel by Frederick M. Aspey, Flagstaff, for respondents.
HAYS, Justice.
William Carl Mauro was indicted by a Coconino County Grand Jury on one count of first degree murder (Count I), A.R.S. § 13-1105, and one count of child abuse (Count II), A.R.S. § 13-3623, based on the death of Mauro's son, David. The state filed this special action to challenge two pretrial rulings of the trial court. The trial court ruled that our recent decision in Crimmins v. Superior Court, 137 Ariz. 39, 668 P.2d 882 (1983), required a new determination of probable cause on Count I, and the trial court also ruled that the insanity statute in effect at the time of the commission of the act would be applied. (The crime was committed on November 23, 1982; the act was amended effective July 27, 1983; and the trial was originally scheduled for November, 1983.)
We accepted jurisdiction of this special action because the issues involved are of statewide concern. See King v. Superior Court, 138 Ariz. 147, 673 P.2d 787 (1983). We have jurisdiction pursuant to Rules of Procedure for Special Actions, rule 8. On November 3, 1983, we ordered that: Mauro's petition be dismissed; the order of the trial court requiring a new determination of probable cause be vacated; the case be remanded for trial; the statute concerning *424 the insanity defense that was in effect at the time of the commission of the act would apply; and we further ordered that an opinion would follow. On February 10, 1984 Mauro was convicted on both counts. This opinion, however, deals only with the pretrial rulings of the trial court.
The record reveals that on November 23, 1982, Mauro was eating breakfast when the victim, David, who had been locked in the bathroom for three days, began screaming. Mauro said to his wife he would stop the boy from screaming. Mauro then went to the bathroom and the screams soon stopped. Mauro went to a bedroom, returned to the bathroom with a suitcase and closed the bathroom door, only to exit the residence with the suitcase. David was no longer in the bathroom.
Afterwards the Flagstaff Police received a call from a citizen, who said a man, later identified as Mauro, was at a K-Mart claiming to have just killed his son, because the son was the devil, and the devil had told Mauro to kill his son. The state alleges that when the police arrived Mauro was still at the K-Mart and he agreed to lead the police to the body, which had been concealed.
An autopsy revealed that death was caused by asphyxiation. A sock, which had been wound into a ball, and soiled diapers were removed from the victim's trachea. The pathologist indicated that David probably had died while in the bathroom. There were ante-mortem lacerations and abrasions on the body.
CRIMMINS ISSUE
Mauro cites our recent decision in Crimmins, supra, in support of his argument "that once the state presents evidence from which the members of the Grand Jury could have returned an indictment on one of the lesser included offenses of first degree murder that it was incumbent upon the state to instruct the members of the Grand Jury on the lesser included offenses of homicide." And cited it for the proposition that the state "did not present all of the evidence known to them concerning [Mauro's] mental state and that, therefore, the [grand jurors] were not presented with the `full picture.'" His arguments will be fully developed and discussed below. The state argues that it had no duty to instruct the grand jury on lesser included offenses because there is probable cause to support an indictment on the crime charged, and the state fairly and impartially presented its case.
In Crimmins, supra, we said: "Petitioner was denied his right to due process and a fair and impartial presentation of the evidence by the manner in which the proceeding was conducted." Id. 137 Ariz. at 43, 668 P.2d at 886. We did not, and will not today, set out a mechanical test to be applied to find whether the state has complied with due process requirements because "what is required to make a `fair presentation' to the grand jury... will vary from case to case." Id. at 44, 668 P.2d at 887 (Feldman, J., specially concurring). However, we think the guidelines set out today will more clearly define the prosecutor's duties before the grand jury.
In Arizona, indictments are based on probable cause. A.R.S. § 21-413; 17 A.R.S. Rules of Criminal Procedure, rule 12.1(d)(4). The primary function of the grand jury is to determine "whether probable cause exists to believe that a crime has been committed and that the individual being investigated was the one who committed it." State v. Baumann, 125 Ariz. 404, 408, 610 P.2d 38, 42 (1980).
In the instant case, the evidence presented to the grand jury, as outlined above, is sufficient to support a finding that there is probable cause to believe first degree murder was committed and that Mauro committed it. See id. But in Mauro's argument, based on Crimmins, supra, in the trial court and in his response to the state's special action, he claims the facts and law not presented to the grand jury would have altered the grand jury's findings. (Although Mauro is not the petitioner, we find it more convenient to address the issues as framed by Mauro.) He *425 states, first, the evidence presented to the grand jury could have supported a finding of probable cause on a lesser included homicide offense and therefore the grand jury should have been instructed on all lesser included homicide offenses supported by the evidence; second, all exculpatory evidence (in essence his mental health history) should have been presented to the grand jury by the state; third, if the state had no affirmative duty to present the exculpatory evidence, the evidence should have been presented to the grand jury because the grand jury asked for it; fourth, since the grand jury should have been presented with the exculpatory evidence of Mauro's mental health history, an instruction on insanity should have been given; and last, even if arguments two and three, supra, are without merit, some evidence of Mauro's mental health was presented to the grand jury, and the grand jury should have been instructed on the defense of insanity.
We find that the state is not required by Crimmins, supra, or any other authority, to instruct on all lesser included offenses. If an indictment is supported by probable cause, and the state makes a fair and impartial presentation of the evidence and law, see Crimmins, supra, 137 Ariz. at 43, 668 P.2d at 886, the state need only instruct the grand jury on the highest charge supported by the evidence. But see State v. O'Daniel, 62 Hawaii 518, 616 P.2d 1383, 1387 (1980) (if evidence clearly establishes a lesser offense, prosecutor must of own volition instruct grand jury on significance of evidence).
Was the presentation of the evidence fair and impartial even though the state did not produce evidence of Mauro's mental health history? There is a dispute as to whether the state knew of this exculpatory evidence when the case was presented to the grand jury, but, for purposes of this argument, we assume the state knew of Mauro's mental health history.
Mauro has a long history of hospitalizations for mental disorders. He once tried to kill his then pregnant wife but was unsuccessful. Believing he had killed her, he attempted suicide. Although this evidence may be admissible at trial, see A.R.S. Rules of Evidence, rule 402 (to be admissible the proposed evidence must be relevant) and rule 401 (relevant evidence is that which has a tendency to prove a fact in issue), the state is not obligated to present exculpatory evidence before a grand jury, absent a request from the grand jury, unless the evidence is clearly exculpatory. See Baumann, supra, 125 Ariz. at 408-09, 610 P.2d at 42-43. Clearly exculpatory evidence is evidence of such weight that it would deter the grand jury from finding the existence of probable cause. See United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir.1979) (suggesting a similar standard, although apparently lower than our standard, for determining when the prosecutor is obligated to present exculpatory evidence).
We do not think the evidence of insanity was clearly exculpatory. Mauro's mental health history and his statements concerning the devil would tend to be exculpatory. But immediately before the crime, Mauro told his wife that he was going to quiet the screaming boy. This statement was not made in an unusual manner; rather, "he just said it," according to the state's witness, who is a police officer. Before arrest Mauro said: "I'm not crazy, I want to pay for what I did, I killed my son, he's in the suitcase...." None of the evidence clearly shows that Mauro lacked the ability to form the requisite intent at the time the crime was committed. See Baumann, supra; see also State v. Bell, 60 Hawaii 241, 589 P.2d 517, 522-23 (1978). We hold the state was not bound to produce the evidence of Mauro's mental health history to the grand jury.
We note that the defense of insanity is not well suited to the primary function of the grand jury. See In re Terranova, 495 F. Supp. 837, 839 (E.D.Wis. 1980) ("instruction on duress and good character evidence would introduce elements which go well beyond whether probable cause exists...."). Often the defense of insanity is *426 established only after lengthy and complex expert testimony. Requiring the state to routinely present evidence of this defense would add cost and delay to the criminal justice system without adding a corresponding safeguard of the defendant's rights, as the petit jury is already charged with determining the truth of the allegations. See United States v. Simon, 510 F. Supp. 232, 236 (E.D.Pa. 1981). Nor do we think such an additional requirement would increase the reliability of the guilt determination.
Moreover, before indictment, the state has no reliable means of gathering the necessary information. Only after indictment can the state require the defendant to be examined to determine the defendant's "mental condition at the time of the offense." 17 A.R.S. Rules of Criminal Procedure, rule 11.2. Only after indictment is the accused obligated to make full disclosure of evidence concerning the defense of insanity. See rule 11.4. Also, because this issue often is decided on the basis of which side's experts are to be believed, it is better suited to the rigorous testing the adversarial process can provide through cross-examination. For all these reasons, we think the determination of this defense is better suited to the function of the petit jury. See Simon, supra.
Was the state obligated to present evidence of Mauro's mental health history because the grand jury requested it? See A.R.S. § 21-412 (grand jury may request exculpatory evidence). After reading the record, we find that the grand jury did not request evidence of insanity. A juror asked the state's witness whether the witness felt Mauro was in a rage or was acting calmly, in response to which the witness reiterated the facts and said that he could only speculate as to the answer. Another juror asked in what manner Mauro's statement "I'm going to make him quiet," was made. The response was "he didn't yell it, he just said it." We cannot say these questions amount to a request for exculpatory evidence. In conclusion, we find that the state breached no duty when it did not present evidence of Mauro's mental health history to the grand jury.
Because the exculpatory evidence was not required to be presented, the state had no duty to instruct on the defense of insanity. Mauro states, however, that his statements linking his son with the devil are evidence of insanity and the grand jury should have been instructed on the defense of insanity. As noted above, the evidence of insanity was not clearly exculpatory; therefore, the instruction on insanity was not required. See State v. Bell, supra at 524 (if evidence clearly establishes a defense, the instruction on that defense should be given).
We find the state fairly and accurately presented the facts and law of the case to the grand jury. See Crimmins, supra. The trial court's ruling remanding Count I to the grand jury was an abuse of discretion. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).
INSANITY DEFENSE
The date of this crime is November 23, 1982. On July 27, 1983, the current version of A.R.S. § 13-502 became effective. The trial was set for November, 1983. Under the old version of the statute a defendant could rebut the presumption of sanity by introducing evidence which generated substantial and reasonable doubt as to his sanity. See State v. Overton, 114 Ariz. 553, 554, 562 P.2d 726, 727 (1977); State v. Ortiz, 114 Ariz. 285, 287, 560 P.2d 803, 805 (1977). The burden was then on the state to prove the accused's sanity beyond a reasonable doubt. Id. As A.R.S. § 13-502(B) reads today, the accused must prove he is not criminally responsible by reason of insanity. He carries his burden of proof if he introduces clear and convincing evidence. See id. Mauro claims that to apply the new version of the statute would violate the ex post facto clause. See U.S. Const. art. I, § 10, cl. 1. The trial court granted the relief requested.
Mauro cites persuasive federal authority to bolster his argument including Calder v. *427 Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798), (a law "that alters the legal rules of evidence, and receives less, or different, testimony, than the laws required at the time of the commission of the offense, in order to convict" is an ex post facto law), and United States v. Williams, 475 F.2d 355 (D.C. Cir.1973) (very similar factual and legal background to the instant case in which court held the application of the new insanity statute to violate ex post facto clause). We agree that the old version of A.R.S. § 13-502 should apply, but we base our decision on Arizona state law Mauro has cited.
Unless a statute is expressly declared to be retroactive, it will not govern events that occurred before its effective date. See A.R.S. § 1-244; see also State v. Edwards, 136 Ariz. 177, 185, 665 P.2d 59, 67 (1983) (statute in effect at time of the crime is applicable); State v. LaPonsie, 136 Ariz. 73, 75-76, 664 P.2d 223, 225-26 (App. 1983) (applying A.R.S. § 1-244). We find nothing in the new provisions of A.R.S. § 13-502 which indicates a legislative intent to make the new provisions retroactive. See Allen v. Fisher, 118 Ariz. 95, 574 P.2d 1314 (App. 1977). Therefore, we affirmed the ruling of the trial court.
Prayer for relief granted in part and denied in part as indicated by our order accepting jurisdiction with opinion to follow.
HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.