717 P.2d 866
**STATE of Arizona, Appellee,**

v.

**David Cameron FLETCHER, Appellant.**

No. 6374.

Supreme Court of Arizona,
En Banc.

March 28, 1986.

Frederic J. Dardis, Pima Co. Public Defender by Donald S. Klein, Constance L. Trecartin, Deputy Pima Co. Public Defenders, Tucson, for appellant.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey and Barbara M. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

HOLOHAN, Chief Justice.

Appellant was convicted of one count of first degree murder and one count of first degree burglary. He was sentenced to life imprisonment without possibility of parole for 25 years on the murder count and to a concurrent term of 7.5 years on the burglary count. We have jurisdiction pursuant to A.R.S. § 13–4031.

On appeal, appellant presents three issues:

1. Was it reversible error for the trial judge to refuse to declare a mistrial on the murder count when it appears that the jurors were deadlocked as to that count?

2. Were the supplemental jury instructions, submitted to the jury after its numerous notes, improper, either as to the law they discussed, or in the manner they were submitted, so as to deny Fletcher a fair trial?

3. Is the recently adopted A.R.S. § 13–502(B), which requires that "the defendant shall prove he is not responsible for criminal conduct by reason of insanity by clear and convincing evidence" unconstitutional, resulting in a denial of a fair trial to Fletcher?

The facts are that the victim and appellant are father and son. The father was employed as a manager for Ithaca Industries and had obtained a job for his son at Ithaca. On September 9, 1983, after a heated argument, the father fired his son from his job at Ithaca. One week later, on September 16, 1983, after purchasing ammunition for his revolver, the appellant returned to Ithaca Industries and shot his father. The father, before his death, identified his son as the assailant. Appellant's defense was that he was insane at the time of the shooting.

Conflicting testimony as to mental competency at the time of the homicide was presented at trial. The defense psychologist diagnosed appellant as a schizotypal personality who experienced a brief reactive psychosis that began when he was fired by his father and ended after appellant shot his father. A brief reactive psychosis was described as a sudden onset of a psychotic disorder that lasts for a few hours, never more than two weeks.

Appellant's relationship with his father had been a stormy one. During his childhood he had nightmares that would send him to his parents' bed, only to be rebuked and sent away by his father under a threat of spanking. In one instance the father restrained the son by putting him in a cedar chest and sitting on the lid.

Appellant reported auditory hallucinations at an early age that continued into adulthood. During these auditory hallucinations he would hear the voice of his father calling him "stupid, messed up and crazy." At age eleven appellant had sought out a psychiatrist for help, but the symptoms continued. During his adolescent years, while living in North Carolina, a computerized axial topography ("CAT Scan") performed on the appellant failed to reveal any organic cause for the severe headaches he was experiencing.

After the divorce of his parents, appellant lost all interest in his appearance and would not bathe or change clothes without prodding. His appearance was a particular irritant to his father. During this period appellant developed a keen interest in numerology and contemplated changing his name as a solution to the problems he was experiencing.

This belief in numerology, categorized as magical thinking by psychologists, along with other manifestations, and coupled with the opinion that appellant was not a "full-blown" schizophrenic, led the defense psychologist to his diagnosis and his conclusion that appellant was unable to appreciate the wrongfulness of his act.

The prosecution psychiatrist, on the other hand, testified that although appellant was schizophrenic, paranoid type, his illness did not prevent him from functioning in society. In sum, the psychiatrist testified that appellant was capable of knowing that the shooting was generally considered wrong.

### REFUSAL OF MOTION TO DECLARE MISTRIAL

Appellant argues the trial judge coerced the jury into reaching a verdict after they told him they were deadlocked.

The case was submitted to the jury in the late afternoon of the sixth day of trial; after an hour and a half of deliberations the jury was excused for the night. The next day, a Friday, the jury deliberated a total of six hours and fifty minutes.

On Friday several notes were sent to the trial judge asking for information or clarification. The first asked for the definitions of first and second degree murder; the second stated they could not reach a decision on count one and asked for direction; the third again asked for the definitions of murder and the definition of "use of a gun"; the fourth again voiced an opinion they would be unable to reach a unanimous decision; the fifth asked that they be allowed to read part of the instructions; the sixth asked for a clarification of a part of the instructions; the seventh and last note of the day asked if the jury must unanimously agree on count one before considering count two. After each note counsel was consulted and given the opportunity to object before a response was formed and delivered. Unfortunately, the record of the consultations with counsel after each note from the jury was not made contemporaneous with the discussions on each note. This court has had to rely for its review on the record made of these events by court and counsel at a subsequent date. We disapprove of such practices because a contemporaneous record assures a more complete record which does not depend upon the memories of court and counsel, and it eliminates disputes about the matter stated and the actions taken. The defense counsel asserts that he asked the court to declare a mistrial after both the second and fourth notes and that he made a motion for a mistrial on count one after the jury had left for the weekend. For the purposes of this appeal, we will accept his assertion as a correct statement of his actions.

At approximately 4:50 p.m. Friday afternoon, the trial judge assembled the jury in open court prior to excusing it for the

weekend. The jury, through the foreman, was asked if it felt progress could be made on count one. The foreman reported that progress was unlikely; no dissent to her view was made by any member of the panel. As to count two, however, the record reflects that there was some agreement among the panel members that progress could still be made on that count if deliberations continued. The trial judge asked the jurors and determined that returning on the following Monday would not present a hardship to any member of the jury panel. He then excused the jury until Monday to resume deliberations.

Arizona Rules of Criminal Procedure, Rule 22.4(b), 17 A.R.S., empowers the court to discharge jurors "[u]pon the expiration of such time *as the court deems proper,* [when] it appears that there is no reasonable probability that the jurors can agree upon a verdict...." (emphasis added). A trial judge is in the best position to determine whether there is a "manifest necessity" to declare a mistrial. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 832, 54 L.Ed.2d 717, 728 (1978). A trial judge's finding there was a reasonable probability of a verdict will be accorded great deference on review.

A review of the record shows that at the time that the jury was excused for the weekend, the total amount of time spent in deliberations had been a little over 8 hours, a not unreasonable time considering the 6-day length of the trial, the charges, and the defense involved. A significant number of the jury members expressed an opinion that progress could be made on count two. The trial judge determined from his inquiry of the jury that the return of the jury on Monday morning would not work any hardship on any member of the jury. Considering the circumstances presented to the trial judge at the time, we find no abuse of discretion in the denial of the motion for mistrial.

## SUPPLEMENTAL INSTRUCTIONS

■ Appellant contends that the trial judge, without notifying counsel, modified a supplemental instruction which had been agreed to by counsel. The appellant claims that this action has the same legal effect as a communication to the jury without notice to counsel.

The record reflects that after the jury had been excused on Friday for the weekend, the foreman reminded the trial judge that the jury had not received an answer to its last two questions. A discussion with counsel followed and an understanding was reached to give the jury when it returned on Monday MARJI Instruction No. 204 (revised 4–15–71) and instructions on the method of proceeding if the jury found the defendant not guilty of first degree murder. The instructions read:

If the jury should unanimously find the defendant "Not Guilty" of 1st degree murder, then the jury must proceed to determine the guilt or innocence of the defendant as to 2nd degree murder.

### MARJI—No. 204

Presumption of Innocence—Reasonable Doubt

A defendant in a criminal case is presumed by law to be innocent. The law does not require a defendant to prove his innocence or to produce any evidence.

The burden of proving the defendant guilty beyond a reasonable doubt rests upon the state. This burden never shifts throughout the trial.

The term "reasonable doubt" means a doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt for which a reason can be given, arising from an impartial consideration of the evidence or lack of evidence. (It means a doubt that would cause a reasonable man to pause or hesitate when called upon to act upon the most important affairs of life.)

Again, it must be noted that a contemporaneous record of the conversation with counsel was not made. The record of the events was made after the defendant was sentenced. We strongly disapprove of the practice of making a record after the fact.

The record shows that after the agreement between court and counsel, the trial judge reconsidered his decision. The trial judge decided that it would be ill-advised to submit the complete MARJI No. 204. He sent a modified version of MARJI 204 which eliminated the first two paragraphs of the instruction and the material in the parenthetical at the end of the third paragraph. The information in paragraphs one and two of the instruction relating to presumption of innocence and burden of proof had not been requested by the jury. The trial judge stated that he thought the first paragraph of MARJI 204 would confuse the jury because a defendant raising an insanity defense is required to prove his insanity at the time of the criminal act by clear and convincing evidence. The instruction, however, states that a defendant does not have to produce any evidence. Additionally, the trial judge thought that the second paragraph of MARJI No. 204 was unnecessary because the jury had already received that instruction. The parenthetical material in the third paragraph of the instruction did not, in the trial judge's opinion, add anything to the supplemental instruction. As a result of the trial judge's revision the following instruction was sent to the jury:

> If the jury should unanimously find the defendant "Not Guilty" of 1st degree murder, then the jury must proceed to determine the guilt or innocence of the defendant as to 2nd degree murder.
>
> The term "reasonable doubt" means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all the evidence or from the lack of evidence.

The unilateral action of the trial judge in modifying the instruction was improper. The proper procedure would be to advise counsel of the needed revision and to give them an opportunity to be heard *on the record.* Rule 22.3 of the Arizona Rules of Criminal Procedure states "[s]uch ... [supplemental] instructions [may be] given *only after notice* to the parties." (emphasis added). 17 A.R.S. Additionally, *State v.*

*Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977) states: "It is reversible error for a trial judge in a criminal case to communicate with the jurors after they have retired to deliberate unless the defendant and counsel have been notified and given an opportunity to be present." *Id.* at 141–42, 568 P.2d at 1039–40, *citing State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956); *see also State v. Zuck,* 134 Ariz. 509, 512, 658 P.2d 162, 165 (1982). The trial judge's actions in this matter are strongly disapproved.

■ The test of whether erroneous jury communications require reversal is whether it can be said beyond a reasonable doubt that the defendant was not prejudiced by the communication. *State v. Shumway,* 137 Ariz. 585, 587, 672 P.2d 929, 931 (1983); Rule 22.3, Ariz.R.Crim.P., 17 A.R.S. We note the instruction did not misstate the law. We also note that, in the attempt to make a record after the fact, defense counsel did not point out any prejudice to the defendant, and his objection was only a general one which challenged the action of the trial judge in changing the supplemental instruction without notice to counsel. After a complete review of the record we hold that the trial judge's modification of the supplemental instruction was error, but find it harmless beyond a reasonable doubt.

## SEPARATION OF POWERS AND BURDEN OF PROOF

■ Appellant argues that the defendant's burden of proof in an insanity defense is a procedural matter. Since procedural matters are for the courts, the legislature may not change the burden of proof without violating the separation of powers doctrine. Ariz.Const. art. 3.

■ Procedural, adjective or remedial law is that portion of the law which prescribes the *method of enforcing a right or obtaining redress* for the invasion of that right. Substantive law, on the other hand, is that portion of the law which *creates, defines and regulates rights. State v. Birmingham,* 96 Ariz. 109, 110, 392 P.2d

775, 776 (1964). A change in the substantive law "can *only* be given or denied by [the] constitution or the legislature of [this] state," *Id.* at 111, 392 P.2d at 777, while procedural changes reside with this court. Ariz.Const. art. 6, § 5. (emphasis added) Appellant maintains we have treated the burden of proof on insanity as procedural. In support of that argument appellant quotes *State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983), in which this court stated:

"... the presumption of sanity is a *procedural device* that places on the defendant the burden of producing evidence sufficient to raise a reasonable doubt as to sanity."

*Id.* at 455, 666 P.2d at 1070. (emphasis added)

However, we were not speaking about the burden of proof in an insanity defense in *Grilz.* At the time of *Grilz,* if the issue of insanity was raised, the state was required to establish the converse beyond a reasonable doubt. *State v. Daniels,* 106 Ariz. 497, 478 P.2d 522 (1970); *State v. Cano,* 103 Ariz. 37, 436 P.2d 586 (1968). In *Grilz,* the matter before this court was when the issue of sanity is actually raised. We found, that absent any evidence on the issue of insanity there is a presumption of sanity which acts to eliminate the submission of the issue of the defendant's sanity to the jury. *Grilz,* 136 Ariz. 454-58, 668 P.2d 1063-67. That presumption, however, is spoken of as a "procedural device." Simply, if defendant presented any evidence which raised a reasonable doubt about his sanity, the presumption disappears and the state is required to carry the burden of proof of proving the defendant sane beyond a reasonable doubt. *Grilz* does not stand for the proposition that the burden of proof is a procedural device. As we stated:

"Such a presumption is not in and of itself evidence, but merely an arbitrary rule imposed by the law, to be applied in the absence of evidence, and whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusion of fact."

*Id., citing Seiler v. Whiting,* 52 Ariz. 542, 548-49, 84 P.2d 452, 454-55 (1938).

The burden of proof is considered substantive. *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935, 942 (1959). We believe our decision in *State v. Coconino Cty. Superior Ct., Div. II,* 139 Ariz. 422, 678 P.2d 1386 (1984), indicates our agreement that the insanity defense is substantive. *Id.* at 426, 678 P.2d at 1390. In that case we held that a defendant, whose crime occurred prior to the enactment of A.R.S. § 13-502(B), was entitled to require that the burden of proof be applied as it existed at the time of his crime. Although it must be conceded that the constitutionality of the new statute was not raised, we did not indicate any objection to the new provisions of A.R.S. § 13-502.

Insanity is an affirmative defense in criminal law. *Commonwealth v. Donough,* 377 Pa. 46, 50, 103 A.2d 694, 697 (1954). It is a substantive matter affecting the guilt or innocence of a defendant. *People v. Gillings,* 39 Colo.App. 387, 393, 568 P.2d 92, 97 (1977). A.R.S. § 13-502(B), in changing the burden of proof on the insanity issue, does not violate federal constitutional standards. As was stated in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977),

"[i]f the state ... chooses to recognize a factor that mitigates the degree of criminality or punishment, ... the State may assure itself that the fact has been established with reasonable certainty. To recognize ... a mitigating circumstance does not require the State to prove its nonexistence in each case.... if in [the State's] judgment [it] would be too cumbersome, too expensive, and too inaccurate."

*Id.* at 209, 97 S.Ct. at 2326, 53 L.Ed.2d at 291. The State continues to have the burden of establishing beyond a reasonable doubt the elements of the crime charged, including any culpable mental state required for commission of the crime. *See, County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979). The legislature determined that the burden of proving the defendant's mental condition was one

which should be borne by the defendant. The former requirement that the state carry the burden was considered too difficult.

The enactment of A.R.S. § 13–502(B) did not violate the separation of powers doctrine nor do the terms of the statute encroach upon the powers of this court.

Having examined the record for fundamental error as required by A.R.S. § 13–4035 and having found none, we affirm.

HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, concurring.

I write separately because I continue to disagree with the court's position on the procedure to be followed in considering lesser included offenses.

In the present case, the jury had difficulty in reaching a verdict. On the second day of trial they sent seven messages to the trial judge. Two of them indicated their inability to reach a unanimous verdict on the first degree murder charge. The last note asked the judge if the jury could consider count two (second degree murder) before unanimously acquitting on count one. On the third day of deliberations, the judge answered the jury by instructing them that they must "unanimously find the defendant 'not guilty' of first degree murder [before they could] proceed to determine guilt or innocence of the defendant as to second degree murder." This instruction was correct under the decision in *State v. Wussler*, 139 Ariz. 428, 429–30, 679 P.2d 74, 75–76 (1984). *Wussler* changed the practice previously followed in Arizona, which permitted the jury to consider lesser included offenses whenever they were unable to agree on guilt or innocence of the primary offense charged. *Id.* at 430, 679 P.2d at 76.

The vices of the procedure mandated by *Wussler* are described in my concurrence in that case. *Id.* at 432, 679 P.2d at 78. Part of the problems caused by the *Wussler* instruction are illustrated by this case. Some jurors evidently believed that defendant did not have the state of mind—premeditation—necessary for conviction of first degree murder. The facts certainly could support that verdict. The same jurors might well have believed that defendant did have the intent necessary for conviction of second degree murder. Jurors in that position would have been coerced because the only option available under the *Wussler* rule was to either turn an obviously dangerous person loose or find him guilty of the primary charge, even though they might not believe the evidence warranted such a result. Both alternatives, acquittal of the guilty or conviction of a higher degree than the jurors felt is warranted by the evidence, are unacceptable.

We should not erect procedural barriers that prevent jurors from voting their minds. I continue to believe that the *Wussler* procedure is bad law. It has not been raised as a separate claim of error in this case, so I concur in the result reached by the majority.

GORDON, V.C.J., agrees with Justice FELDMAN's concurrence.