12 P.3d 234

STATE of Arizona, Appellee,

v.

Olander BEASLEY, Appellant.

No. 1 CA–CR 99–0889.

Court of Appeals of Arizona,
Division 1, Department C.

Oct. 31, 2000.

Janet Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and R. Wayne Ford, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Louise Stark, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

VOSS, Judge.

¶ 1 This appeal concerns yet another permutation on the substantive and procedural complexities surrounding the implementation of Proposition 102, the Juvenile Justice Initiative, approved by Arizona voters in 1996. Ariz. Const. art. 4, pt. 2, § 22. The fourteen-year-old defendant in this case was tried as an adult after the trial court concluded that he was a "chronic felony offender" subject to adult prosecution pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 13–501(B) (Supp.1997). Defendant's status as a chronic felony offender was premised on his two prior juvenile adjudications, both of which occurred before the passage of Proposition 102 and its enabling legislation. For the reasons that follow, we conclude that the trial court erred in finding defendant a chronic felony offender and we therefore reverse his conviction.

### FACTS AND PROCEDURAL HISTORY

¶ 2 On May 28, 1998, Phoenix police officers responded to a report of shots fired at defendant's residence. Upon arrival, police discovered defendant with a self-inflicted gunshot wound. Defendant was on juvenile probation at the time of the incident, and was thus a prohibited possessor of a weapon. A.R.S. §§ 13–3101(6) and –3102(A)(4) (Supp. 1997).

¶ 3 Defendant had two prior juvenile adjudications: a November 22, 1996, guilty plea to aggravated assault and a July 3, 1996, guilty plea to burglary. Both of these adju-

dications preceded the effective date of Proposition 102. Ariz. Const. art. 4, pt. 2, § 22. Moreover, the law in effect at the time defendant entered his guilty pleas to the 1996 offenses provided that these juvenile dispositions could not be used against him in any case or proceeding in any court other than a juvenile court. A.R.S. § 8–207(C) (1989).[1]

¶ 4 The state charged defendant in superior court with misconduct involving weapons. Its authority for doing so was A.R.S. section 13–501(B)(5) (Supp.1997), which grants the county attorney the discretion to try as an adult a juvenile who is charged with a felony, is at least fourteen years old, and is a chronic felony offender. A chronic felony offender is defined as "a juvenile who has had two prior and separate adjudications and dispositions for conduct that would constitute a historical prior felony conviction if the juvenile had been tried as an adult." A.R.S. § 13–501(G)(2) (Supp.1997).

¶ 5 The state contended that defendant's 1996 juvenile adjudications for aggravated assault and burglary would both have been historical prior felony convictions had defendant been tried as an adult. It thus maintained that defendant was subject to trial as an adult as a chronic felony offender.

¶ 6 Defendant requested a hearing pursuant to A.R.S. section 13–501(E) (Supp.1997) to determine his status as a chronic felony offender. Section 13–501(E) provides:

> Upon motion of the juvenile the court shall hold a hearing after arraignment and before trial to determine if a juvenile is a chronic felony offender. At the hearing the state shall prove by a preponderance of the evidence that the juvenile is a chronic felony offender. If the court does not find that the juvenile is a chronic felony offender, the court shall transfer the juvenile to the juvenile court pursuant to § 8–302. If the court finds that the juvenile is a chronic felony offender or if the juvenile does not file a motion to determine if the juvenile is a chronic felony offender, the criminal prosecution shall continue.

¶ 7 Defendant argued at the 501(E) hearing that the court lacked jurisdiction to try him as an adult because he was, as a matter of law, not a chronic felony offender. Specifically, he maintained that, because the two prior juvenile adjudications upon which the state relied to prove his chronic felony offender status occurred before the passage of Proposition 102 and its enabling legislation, the court could not consider those prior adjudications in determining his chronic felony offender status.

¶ 8 The core of defendant's argument involved the retroactive application of A.R.S. section 8–207(B). Defendant argued that the post-Proposition 102 version of that section, which permits the state to use a defendant's juvenile court adjudications against him in a criminal case, could not be applied to him because the version of section 8–207 in effect at the time of his adjudications specifically stated that evidence of those adjudications could not be used against him in any court other than a juvenile court. A.R.S. § 8–207(C) (1989). Defendant argued that this prior version of section 8–207 provided him with a "substantive right"—namely, that his adjudications could be used against him only in juvenile court—that the revised version of the statute could not lawfully abrogate.

¶ 9 The trial court rejected defendant's argument, concluding that this court's decision in *In re Jerry B.* was "determinative of the issue" of whether the revised version of section 8–207 could be applied retroactively. The court then ruled that defendant was a chronic felony offender, finding that both his aggravated assault and burglary adjudications were for conduct that would have constituted historical prior felony convictions if defendant had been tried as an adult.

¶ 10 A bench trial immediately followed, at the conclusion of which the court found defendant guilty of the misconduct involving weapons charge. The court subsequently suspended defendant's sentence and placed him on probation for four years, with de-

---

1. The legislature amended section 8–207 in 1997 to conform to the requirements of the Juvenile Justice Initiative. Section 8–207(B) now provides that a juvenile disposition may not be used against a juvenile "in any case or proceeding *other than a criminal or juvenile case.*" A.R.S. § 8–207(B) (1999)(emphasis added).

ferred jail time of three months as a condition of probation. Defendant timely appealed.'

## DISCUSSION

■ ¶ 11 Defendant argues on appeal that the state illegally used his juvenile adjudications to prosecute him as an adult. He maintains that the trial court's finding that he was a chronic felony offender was in error because (1) it is premised on an improper retroactive application of A.R.S. section 8–207(B); (2) the state failed to prove that his juvenile adjudication for aggravated assault was for conduct that would have constituted a historical prior felony conviction had he been tried as an adult; and (3) his parole status was inadmissible as a legal consequence of his juvenile adjudications. Because we agree with defendant's first argument, we need not reach the other two issues.

¶ 12 The Arizona Supreme Court recently addressed the retroactive application of A.R.S. section 8–207 in *In re Shane B.* CV–98–0422–PR (Ariz. Jul. 27, 2000). That case concerned a defendant's designation as a "first time felony juvenile offender" pursuant to A.R.S. section 8–341 (Supp.1999). Section 8–341(T)(1) defines a "first time felony juvenile offender" as "a juvenile who is adjudicated delinquent for an offense that would be a felony if committed by an adult." [2]

¶ 13 The juvenile in *Shane B.* pled guilty to two counts of third-degree burglary. *Shane B.* at ¶ 2, 979 P.2d 1014. Both burglaries were committed before the effective dates of the amendments to A.R.S. sections 8–341 and 8–207(B). *Id.* at ¶¶ 2 and 5, 979 P.2d 1014. The juvenile's guilty plea, however, was entered *after* the effective date of those amendments. *Id.* The trial court adjudicated the juvenile a first time felony juvenile offender, and the juvenile challenged that adjudication on appeal. Much like the defendant in this case, the juvenile in *Shane B.* argued that, because the version of A.R.S. section 8–207

in effect when he committed his offenses provided that "the disposition of a child in the juvenile court may not be used against the child in any case or proceeding in any court other than a juvenile court," his status as a first time felony juvenile offender could not be predicated on his commission of an offense prior to July 21, 1997, the effective date of the post-Proposition 102 versions of sections 8–207 and 8–341. *Shane B.* at ¶ 5, 979 P.2d 1014.

■ ¶ 14 The Arizona Supreme Court agreed that application of the first time felony juvenile offender provision to an offense committed before the statute's effective date constituted a retroactive application of the statute. *Shane B.* at ¶ 7, 979 P.2d 1014. The court further acknowledged that, although as a general rule the law prohibits retroactive application of statutes and statutory amendments, the prohibition against retroactive application is not absolute. *Id.* at ¶ 8, 979 P.2d 1014. Rather, a court may apply a statute retroactively if it is "merely procedural." *Id.* "The relevant inquiry thus becomes whether retroactive application of [the statute] ... 'affect[ed] an earlier established substantive right' and is therefore improper." *Id.* at ¶ 8, 979 P.2d 1014 (quoting *St. Joseph's Hosp. and Med. Ctr. v. Superior Court,* 164 Ariz. 454, 457, 793 P.2d 1121, 1124 (App.1990)).

¶ 15 The court concluded in *Shane B.* that retroactive application of the first time felony juvenile offender provision of section 8–341 had only a procedural effect on the petitioner in that case, and was thus permissible. *Shane B.* at ¶ 16, 979 P.2d 1014. Critical to the court's reasoning was the fact that the petitioner's adjudication as a first time felony juvenile offender had no immediate effect on his ability to remain within the juvenile system. *Id.* at ¶ 15, 979 P.2d 1014. In other words, retroactive application of A.R.S. section 8–341 in that case did not involve the

---

**2.** Adjudication as a first time felony offender is the first step toward designation as a chronic felony offender for purposes of adult prosecution under A.R.S. section 13–501(B)(5). If the first time felony juvenile offender commits a subsequent offense that would be a felony if committed by an adult, he is designated a "re-

peat felony juvenile offender." A.R.S. § 8–341(T)(2). Only after the juvenile has committed two offenses that would qualify as felonies had he been tried as an adult may he be designated a chronic felony offender for purposes of trial as an adult on his third offense. A.R.S. § 13–501(B)(5).

juvenile's actual transfer or immediate risk of transfer to adult court for present crimes:

> We conclude, as a matter of law, that petitioner's substantive interests have not been divested by application of the statute to him. Any transfer of petitioner to adult court or consequent forfeiture of juvenile system privileges depends solely on future, as yet non-existent, criminal activity, and we decline to speculate on future criminal activity. The statute does not affect petitioner's present offense.

*Id.* at ¶ 16, 979 P.2d 1014.

¶ 16 In upholding the retroactive application of section 8–341 in *Shane B.*, the Supreme Court distinguished this court's decision in *Saucedo v. Superior Court,* 190 Ariz. 226, 946 P.2d 908 (App.1997). *Shane B.* at ¶ 13, 979 P.2d 1014. *Saucedo* involved the automatic transfer provision of the Juvenile Justice Initiative. The question presented in *Saucedo* was whether the automatic transfer provision could be retroactively applied in a case in which the prosecution was initiated after the enactment of Proposition 102, but arose from crimes committed before enactment. 190 Ariz. at 227, 946 P.2d at 909. We held in *Saucedo* that retroactive application was impermissible because it deprived the juvenile of *"eligibility* to be retained in the juvenile court and to receive the lesser punitive consequences applicable there." *Id.* at 229, 946 P.2d at 911 (emphasis in original). In *Shane B.*, the Supreme Court found the presence of immediate consequences to the juvenile in *Saucedo* to be the "key distinction" between the two cases:

> Saucedo, a juvenile, was exposed to increased punitive consequences as a result of his *present* crime, i.e., the actual underlying offense, not a non-existent future crime. Here, unlike *Saucedo,* petitioner faces consequences *only* if he reoffends in the future. Accordingly, section 8–341 can have no effect on petitioner's present offense or its punishment and thus can have no impact on petitioner's earlier established substantive rights. Of course, we will not speculate about a future criminal act which may never occur.

*Shane B.* at ¶ 13, 979 P.2d 1014 (emphasis in original).

¶ 17 In this case, the retroactive application of A.R.S. section 8–207(B), which permitted the trial court to consider defendant's two 1996 juvenile adjudications in determining whether he was a chronic felony offender, did have an immediate and substantial impact on defendant's rights. Application of the statute in effect at the time defendant committed his prior offenses would have precluded the court from considering those offenses in determining defendant's chronic felony offender status. A.R.S. § 8–207(C) (1989). Those two prior adjudications, however, served as the basis for the trial court's finding that defendant was a chronic felony offender. Without such a finding, defendant could not have been tried in adult court. A.R.S. § 13–501(B)(5).

¶ 18 The trial court believed that its ruling was supported by this court's decision in *In re Jerry B.,* 193 Ariz. 449, 973 P.2d 1210 (App.1998). We disagree. In *Jerry B.,* we found no *ex post facto* violation in adjudicating a juvenile a first time felony juvenile offender under A.R.S. section 8–241 (now numbered section 8–341) when the juvenile committed his offense prior to the passage of Proposition 102, but pled guilty to that offense after the proposition's passage. 193 Ariz. at 450–51, 973 P.2d at 1211–12. Relying on this court's opinion in *In re Shane B.,* 194 Ariz. 221, 979 P.2d 1014 (App.1998), *aff'd as modified,* 7 P.3d 94 (Ariz. 2000), we found no impropriety in retroactive application of the statute because, as in *Shane B.,* the juvenile would face increased punishment only if he reoffended. *Jerry B.,* 193 Ariz. at 451, 973 P.2d at 1212. In other words, he faced no immediate consequences as a result of the retroactive application.

¶ 19 In contrast, the defendant in this case faced immediate and significant consequences as a result of the trial court's retroactive application of section 8–207(B). Retroactive application permitted the court to conclude that defendant was a chronic felony offender, which in turn permitted the state to try him as an adult.

## CONCLUSION

¶ 20 Relying on the Supreme Court's decision in *Shane B.* and our decision in *Saucedo,*

we hold that the trial court's retroactive application of A.R.S. section 8–207(B) violated defendant's constitutional right to due process. Accordingly, we reverse defendant's conviction and vacate the trial court's ruling finding him to be a chronic felony offender.

CONCURRING: NOEL FIDEL, Judge, and CECIL B. PATTERSON, Jr., Judge.