58 P.3d 516

The STATE of Arizona, Appellee,

v.

Colten Eugene GRIFFIN, Appellant.

No. 2 CA–CR 2001–0020.

Court of Appeals of Arizona.
Division Two, Department B.

Nov. 21, 2002.

Janet Napolitano, Arizona Attorney General, By Randall M. Howe and Joseph L. Parkhurst, Tucson, for Appellee.

Isabel G. Garcia, Pima County Legal Defender, By Joy Athena and Stephan J. McCaffery, Tucson, for Appellant.

## OPINION

PELANDER, J.

¶1 After a jury trial, appellant Colten Eugene Griffin was convicted of possessing a deadly weapon as a prohibited possessor in violation of A.R.S. § 13–3102(A)(4). He was acquitted of cruel mistreatment of an animal. The trial court sentenced Griffin to a presumptive four-and-one-half-year prison term and ordered him to pay restitution. Griffin contends his conviction improperly required the retroactive application of A.R.S. § 13–904(A)(5) to his prior 1992 felony conviction and, therefore, violated A.R.S. § 1–244 and his federal and state constitutional rights to due process. U.S. Const. amend. V and XIV; Ariz. Const. art. II, § 4. We agree that, absent an express legislative declaration of retroactive intent, retroactive application of § 13–904(A)(5) impermissibly altered the legal consequences of Griffin's 1992 conviction, which had not suspended his vested right to possess a firearm. Therefore, we vacate his conviction. Because we further agree with Griffin, as does the state, that the trial court erred in imposing restitution, we also vacate that order.

## BACKGROUND

¶2 On appeal, we generally view the facts in the light most favorable to sus-

taining the verdict. *State v. Carrasco,* 201 Ariz. 220, ¶ 1, 33 P.3d 791, ¶ 1 (App.2001). Because Griffin also challenges the trial court's refusal to instruct the jury on his proffered justification defense, however, we view the evidence in the light most favorable to him. *See State v. Rodriguez,* 192 Ariz. 58, ¶ 20, 961 P.2d 1006, ¶ 20 (1998); *State v. Lucas,* 146 Ariz. 597, 603, 708 P.2d 81, 87 (1985). In any event, although the parties presented conflicting evidence at trial about the circumstances that led to Griffin's arrest and conviction, any factual discrepancies are not material to our ruling on the retroactivity issue.

¶ 3 In February 2000, Griffin and his neighbor, John Lumia, had an ongoing easement dispute involving their remote, adjoining property in Vail, Arizona. Griffin and his girlfriend, Carol Brockman, drove past Lumia, who was walking his dog along the roadway that ran between their parcels. As Griffin passed Lumia, both parties angrily exchanged words. By the time Griffin turned his truck around and headed back in the other direction, Lumia had obtained a rifle and had positioned his truck across the roadway to block Griffin's travel. Griffin and Brockman testified that, when they had approached Lumia's truck, Lumia had pointed his rifle at them and they had feared he would shoot them.

¶ 4 Griffin eventually drove around Lumia's truck and returned to his property. According to Griffin and Brockman, Lumia continued to point the rifle at them while they were on Griffin's land. They wanted to call the sheriff's department to report the incident and seek help, but their cellular telephone only had service in an area near the main access road that was exposed to Lumia's rifle. Griffin retrieved Brockman's shotgun from inside a trailer on his property in order to "draw fire" from Lumia while Brockman called the authorities. Griffin positioned himself in his driveway while Brockman made the telephone call, but did not aim the shotgun at Lumia.

¶ 5 As Griffin stood in his driveway, Lumia's dog ran across Griffin's property, chasing and nipping at one of the goats Griffin raised on the land. Griffin shot the dog in the rear, according to his testimony, to frighten and discourage it from returning to his land. The dog was treated and eventually recovered.

## DISCUSSION

### I. Application of § 13–904(A)(5) to Griffin's 1992 Conviction

¶ 6 Griffin contends retroactively applying § 13–904(A)(5) to his 1992 conviction, thereby suspending his right to possess a firearm and consequently changing his status to that of a prohibited possessor under A.R.S. § 13–3101(A)(6)(b), violates § 1–244 and his federal and state due process rights. By failing to raise this claim below, Griffin waived it absent fundamental error. *See State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991); *State v. Tison,* 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981); *State v. Calabrese,* 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988). "Fundamental error is 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Bible,* 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993), *quoting State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). If Griffin's claim is correct, he would not have been a prohibited possessor at the time of this offense, and his conviction under § 13–3102(A)(4) as a prohibited possessor would amount to fundamental error.

¶ 7 Section 1–244 provides that "[n]o statute is retroactive unless expressly declared therein." In other words, " § 1–244 requires an express statement of retroactive intent before a statute will be considered retroactive." *San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, ¶ 14, 972 P.2d 179, ¶ 14 (1999). Under § 1–244, "[u]nless a statute is expressly declared to be retroactive, it will not govern events that occurred before its effective date." *State v. Coconino County Superior Court,* 139 Ariz. 422, 427, 678 P.2d 1386, 1391 (1984). Similarly, A.R.S. § 1–246 provides that, in the criminal context, an "offender shall be punished under the law in force when the offense was com-

mitted." Because the current version of § 13–904(A)(5) does not expressly state that it is to be retroactively applied, we first must determine whether that statute was retroactively applied to Griffin's 1992 conviction.

¶ 8 We look to the date of the offense, rather than the date of adjudication, to determine whether a statute is being retroactively applied. *In re Shane B.*, 198 Ariz. 85, ¶ 7, 7 P.3d 94, ¶ 7 (2000). Griffin previously was convicted in Pinal County of aggravated assault, a class three, nondangerous felony, for an offense committed in February 1992. At that time, § 13–904(A) provided:

> A conviction for a felony suspends the following civil rights of the person sentenced:
>
> 1. The right to vote.
>
> 2. The right to hold public office of trust or profit.
>
> 3. The right to serve as a juror.
>
> 4. During any period of imprisonment any other civil rights the suspension of which is reasonably necessary for the security of the institution in which the person sentenced is confined or for the reasonable protection of the public.[1]

1977 Ariz. Sess. Laws, ch. 142, § 49 (adopted as A.R.S. § 13–804); 1978 Ariz. Sess. Laws, ch. 201, § 116 (renumbering § 13–804 as § 13–904). Thus, Griffin did not lose his civil right to possess a firearm as a result of his 1992 conviction.

¶ 9 Moreover, at the time of Griffin's 1992 offense, former § 13–3101(6)(b) provided that a " '[p]rohibited possessor' means any person ... [w]ho has been convicted within or without this state of a felony involving violence or possession and use of a deadly weapon or dangerous instrument and whose civil rights have not been restored." 1991 Ariz. Sess. Laws, ch. 316, § 2. Although the record before us does not reflect the underlying circumstances of Griffin's 1992 conviction, the state does not claim that offense involved violence or the use of any weapon. Accordingly, we presume that Griffin would not have been classified as a "prohibited possessor" under former § 13–3101(6), and the state does not argue otherwise.[2]

¶ 10 In 1994, both §§ 13–904 and 13–3101 were amended. 1994 Ariz. Sess. Laws, ch. 200, §§ 5, 18. The current version of § 13–904(A) provides that conviction for a felony suspends not only those rights listed in ¶ 8 above, but also the convicted felon's right "to possess a gun or firearm." § 13–904(A)(5). And § 13–3101(A)(6)(b) now provides that a " '[p]rohibited possessor' means any person ... [w]ho has been convicted within or without this state of a felony ... and whose civil right to possess or carry a gun or firearm has not been restored." Therefore, as Griffin correctly deduces, if he can be considered a "prohibited possessor" under current § 13–3101(A)(6)(b) as a felon "whose civil right to possess or carry a gun or firearm has not been restored," it is because he lost that right in some way other than by application of the version of § 13–904(A) in effect at the time he committed his prior offense.

¶ 11 Griffin maintains the only way he could have lost the right to possess a firearm is through retroactive application of current § 13–904(A)(5) to his 1992 conviction.[3] In its answering brief, the state apparently agreed,

---

1. To the extent that A.R.S. § 13–904(A)(4) could be read to restrict a felon's right to possess a firearm during imprisonment, any such restriction would expire by its own terms once the person is released from prison. *See United States v. Meza–Corrales*, 183 F.3d 1116, 1129 n. 6 (9th Cir.1999).

2. The state's indictment and allegation of prior conviction in this case referred to Griffin's prior conviction of "assault" and did not allege that the prior offense was dangerous or violent. *See State v. Benak*, 199 Ariz. 333, ¶ 7, 18 P.3d 127, ¶ 7 (App.2001). We note, however, that a 1994 Pinal County Superior Court sentencing order, admitted into evidence at trial in this case, reflects that Griffin's 1992 conviction was for "[a]ggravated [a]ssault, a class 3 non-dangerous felony, in violation of ARS § 13–1204(A)(2)." Aggravated assault under that subsection involves use of "a deadly weapon or dangerous instrument." Thus, if Griffin's 1992 offense and resulting conviction, in fact, involved the use of a deadly weapon or dangerous instrument, he presumably would have been a "prohibited possessor" even under the 1992 version of § 13–3101(6)(b). But, because the record does not clearly permit us to reach that conclusion, and because the state did not so contend either in its brief or at oral argument, we do not make that assumption.

3. Griffin succinctly outlines his argument as follows:

   1. Appellant is guilty of misconduct involving weapons under § 13–3102 only if he is a

stating that the 1994 amendments to §§ 13–904 and 13–3101 "retroactively applied to [Griffin's] prior felony conviction." Citing *State v. Olvera*, 191 Ariz. 75, 952 P.2d 313 (App.1997), the state contended the amendments "could be applied retroactively" because they were "regulatory in nature," only "affected the consequences of [Griffin's] future behavior" rather than increasing the punishment for his prior conviction, and thus, did not violate the federal and state constitutional prohibitions against ex post facto laws. *See* U.S. Const. art. I, § 10, cl. 1; Ariz. Const. art. II, § 25.

¶ 12 The state modified its position at oral argument, arguing that the 1994 statutory amendments had not been retroactively applied to Griffin but, rather, that his 1992 conviction merely conferred a status on him, the consequences of which were subject to legislative change. Relying on *People v. Mills*, 6 Cal.App.4th 1278, 8 Cal.Rptr.2d 310 (1992), the state now argues that the 1994 amendments permissibly altered the consequences of Griffin's prior, fixed status as a convicted felon. In rejecting an ex post facto challenge to a California statutory amendment that broadened the type of firearms that convicted felons could not own, possess, or control, the court in *Mills* stated:

> Here defendant was convicted of conduct, his possession of a shotgun, occurring after the effective date of the [amended] statute. His conduct was a violation of the new statute, rather than an increase of punishment for the earlier offense of possessing marijuana for sale. Although the statute only applied to him because of his status as a person convicted of a felony, and the felony conviction occurred before the statute became effective, the fact of his prior conviction only places him into a *status* which makes the new law applicable to him. The legal consequences of his past conduct were not changed—only a new law was applied to his future conduct.

*Id.* at 314–15.

¶ 13 As the state conceded at oral argument, whether a statute is an ex post

facto law is a somewhat different issue from whether a statute violates the mandate of § 1–244. *See Coconino County Superior Court*, 139 Ariz. at 427, 678 P.2d at 1391 (court declines ex post facto analysis when case can be decided on alternate state law ground of § 1–244, which prohibits statute's retroactive application without expressed legislative intent of retroactive application); *State v. Fallon*, 151 Ariz. 188, 189 n. 1, 726 P.2d 604, 605 n. 1 (App.1986), *aff'd*, 151 Ariz. 192, 726 P.2d 608 (1986) (unnecessary to reach constitutional question of alleged ex post facto violation because case could be decided on alternate state law ground of § 1–244). Although we begin both analyses by considering whether a law is being retroactively applied, the prohibition against ex post facto laws applies only to penal statutes. *Martin v. Reinstein*, 195 Ariz. 293, ¶ 41, 987 P.2d 779, ¶ 41 (App.1999); *see also State v. Schmidt*, 143 Wash.2d 658, 23 P.3d 462, 471 (2001) ("[E]x post facto prohibitions apply only to statutes which are 'criminal' or 'punitive.' "). Section 1–244, on the other hand, applies to both civil and penal statutes. *See San Carlos*, 193 Ariz. 195, ¶¶ 14–15, 972 P.2d 179, ¶¶ 14–15 (§ 1–244 and due process considerations prohibit retroactive application of water rights legislation); *In re Maricopa County Juvenile Action Nos. JV–512600 & JV–512797*, 187 Ariz. 419, 422, 930 P.2d 496, 499 (App.1996) (§ 1–244 unambiguously applies to criminal statutes).

¶ 14 Moreover, the ex post facto prohibition is primarily concerned with whether such retroactive application " 'makes an action done before the passing of the law, and which was innocent when done, criminal,' " or " '*changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.*' " *State v. Noble*, 171 Ariz. 171, 173, 829 P.2d 1217, 1219 (1992), *quoting Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798) (emphasis added in *Noble* ). In con-

---

prohibited possessor as defined by § 13–3101.

2. Appellant is a prohibited possessor, under the facts of this case, only if he has not had his civil right to possess a firearm restored.

3. Appellant has not had his civil right to possess a firearm restored only if his civil right to possess a firearm has been removed by § 13–904.

trast, § 1–244 concerns whether retroactive application of a statute "disturb[s] vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos,* 193 Ariz. 195, ¶ 15, 972 P.2d 179, ¶ 15.

¶ 15 Retroactive application of a statute does not offend ex post facto principles, however, if the statute's purpose is nonpunitive and merely regulatory. *Noble,* 171 Ariz. at 174–75, 829 P.2d at 1220–21; *see also Olvera,* 191 Ariz. at 77, 952 P.2d at 315. As this court concluded in *Olvera,* a law that prohibits established felons[4] from possessing firearms does not violate the ex post facto prohibition because such laws can be classified as the nonpunitive regulation of conduct the legislature has the power to regulate, and such regulation is reasonably related to the past conduct of a felony offense. 191 Ariz. at 76–77, 952 P.2d at 314–15; *see also Schmidt,* 23 P.3d at 473 (no ex post facto violation when, "incident to the State's regulation of firearms to protect the safety of the public, the prohibition of firearm possession was designed to regulate more closely the ownership, possession and control of firearms by those who, because of prior felony convictions, were unfit to be entrusted with any firearm"); *cf. State v. Noel,* 3 Ariz.App. 313, 315, 414 P.2d 162, 164 (1966) (precursor statute to § 13–3102 did not violate ex post facto prohibition in light of legislature's power to protect public from weapons possession by previously convicted, violent felons).[5]

¶ 16 As *Olvera* notes, a change of status that results in increased punishment for new conduct is not an ex post facto violation. 191 Ariz. at 76–77, 952 P.2d at 314–15; *see also Mills.* But when that sta-

tus is changed as a result of the passage of a new or amended statute and that change alters the legal consequences of a prior conviction, § 1–244 is implicated. Here, absent retroactive application of § 13–904(A)(5) to Griffin's 1992 conviction, he did not have the status of a " 'prohibited possessor felon' ... whose right to possess a firearm [had been] suspended," *Olvera,* 191 Ariz. at 77, 952 P.2d at 315, nor would he have had any reason or need to restore his otherwise intact civil right to possess a firearm. § 13–3101(A)(6)(b).

¶ 17 Under a § 1–244 analysis, we look not to whether the retroactively applied statute has a punitive or regulatory purpose, but to whether the "legislation ... disturb[s] vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos,* 193 Ariz. 195, ¶ 15, 972 P.2d 179, ¶ 15; *see also Shane B.; State v. Murray,* 194 Ariz. 373, ¶ 5, 982 P.2d 1287, ¶ 5 (1999); *State v. Jensen,* 193 Ariz. 105, ¶¶ 16, 24, 970 P.2d 937, ¶¶ 16, 24 (App.1998). But the "prohibition on retroactive application of statutes is not absolute." *Shane B.,* 198 Ariz. 85, ¶ 8, 7 P.3d 94, ¶ 8. Under a judicially created exception to § 1–244, a statute does not have an impermissible retroactive effect if it is " 'merely procedural and does not affect an earlier established substantive right.' " *Shane B.,* 198 Ariz. 85, ¶ 8, 7 P.3d 94, ¶ 8, *quoting Bouldin v. Turek,* 125 Ariz. 77, 78, 607 P.2d 954, 956 (1979). Thus, even when a statute is not expressly retroactive, "court[s] may apply such statute retroactively if it is merely procedural." *Id.* The relevant inquiry, therefore, becomes whether retroactive application of § 13–904(A)(5) to Griffin was merely procedural or whether it impermissibly altered a substantive, vested

---

4. Olvera and Griffin are similarly situated in that Olvera had been convicted of a 1992 offense that did not result in suspension of his civil right to possess a firearm at the time of his conviction. He was later convicted of weapons misconduct as a prohibited possessor after the 1994 amendments to A.R.S. §§ 13–904 and 13–3101 were enacted. *State v. Olvera,* 191 Ariz. 75, 75–76, 952 P.2d 313, 313–14 (App.1997).

5. Griffin does not challenge *Olvera*'s ex post facto analysis or conclusion. As the Nebraska Supreme Court recently observed: "The overwhelming majority of courts [have held] that a conviction under a statute forbidding possession

of a firearm by a person convicted of a felony does not violate the Ex Post Facto Clause even when the felony or felonies for which the defendant was convicted took place before the statute was enacted." *State v. Peters,* 261 Neb. 416, 622 N.W.2d 918, 924 (2001) (citing cases); *see also People v. Mesce,* 52 Cal.App.4th 618, 60 Cal. Rptr.2d 745 (1997); *People v. Mills,* 6 Cal. App.4th 1278, 8 Cal.Rptr.2d 310 (1992); *Jordan v. State,* 56 S.W.3d 326 (Tex.Ct.App.2001); *State v. Schmidt,* 143 Wash.2d 658, 23 P.3d 462 (2001). *But see State v. Trower,* 629 N.W.2d 594 (S.D.2001).

right that he had. *Shane B.*, 198 Ariz. 85, ¶ 8, 7 P.3d 94, ¶ 8.

¶ 18 A substantive right is one that " 'creates, defines, and regulates rights while a procedural one prescribes the method of enforcing such rights or obtaining redress.' " *Id.* at ¶ 9, 7 P.3d 94. Generally, a substantive criminal law defines what is criminal conduct or determines the length.or type of punishment. *Id.* Although this is a criminal case, the right at stake here is the Arizona constitutional right to bear arms in self-defense.[6] *See* Ariz. Const. art. II, § 26. It is a right, created and protected by the Arizona Constitution, that has "nothing to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Collins v. Youngblood*, 497 U.S. 37, 51, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30, 45 (1990); *see also Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17, 24 (1981) ("The presence or absence of an affirmative, enforceable right is not relevant . . . to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred.").

¶ 19 To be sure, the right to possess a firearm in Arizona is qualified and subject to legislative regulation. *City of Tucson v. Rineer*, 193 Ariz. 160, ¶¶ 13, 16, 971 P.2d 207, ¶¶ 13, 16 (App.1999); *Dano v. Collins*, 166 Ariz. 322, 324, 802 P.2d 1021, 1023 (App.1990) (Arizona "constitutional right to bear arms is not absolute"); *Noel*, 3 Ariz.App. at 315, 414 P.2d at 164. But it cannot fairly be categorized as a procedural right, which generally is defined as a " 'method of enforcing . . . [substantive] rights or obtaining redress.' " *Aranda v. Industrial Comm'n*, 198 Ariz. 467, ¶ 12, 11 P.3d 1006, ¶ 12 (2000), *quoting Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 138, 717 P.2d 434, 442 (1986).

¶ 20 A "vested right" is a right " 'actually assertable as a legal cause of action or defense or . . . so substantially relied upon that retroactive divestiture would be manifestly unjust.' " *San Carlos*, 193 Ariz. 195, ¶ 15, 972 P.2d 179, ¶ 15, *quoting Hall*, 149 Ariz. at 140, 717 P.2d at 444. In property law, a right " 'vests' when every event has occurred which needs to occur to make the implementation of the right a certainty." *Aranda*, 198 Ariz. 467, ¶ 18, 11 P.3d 1006, ¶ 18. A right is not vested if it is merely an "expectancy, contingent on some future event." *Zuther v. State*, 199 Ariz. 104, ¶ 18, 14 P.3d 295, ¶ 18 (2000); *see also Mejia v. Industrial Comm'n*, 202 Ariz. 31, ¶ 5, 39 P.3d 1135, ¶ 5 (App.2002). Arizona courts previously have determined that, "[b]y reason of statutes in effect at the time a crime is committed, a defendant has a vested right in the length of incarceration provided for an offense, defenses to the crime and burdens of proof, . . . [and] the possibility of probation." *State v. Winton*, 153 Ariz. 302, 305, 736 P.2d 386, 389 (App.1987), *citing State v. Gonzales*, 141 Ariz. 512, 687 P.2d 1267 (1984); *Coconino County Superior Court*, 139 Ariz. 422, 678 P.2d 1386 (1984); and *State v. Mendivil*, 121 Ariz. 600, 592 P.2d 1256 (1979).

¶ 21 At the time of Griffin's 1992 offense, a nonviolent and non-weapons-related felony conviction had no effect on an Arizona citizen's constitutional right to possess a firearm. That right, albeit qualified and subject to legislative regulation, *Rineer*, is still more fairly classified as vested or established rather than contingent. *Cf. State v. Martin*, 102 Ariz. 142, 144, 426 P.2d 639, 641 (1967) (article II, § 24 of Arizona Constitution "vests" in accused " 'explicit' " right to defend self).

¶ 22 In *Aranda*, our supreme court held that retroactive application of a statute suspending convicts' receipt of workers' compensation benefits during incarceration was impermissible under § 1–244. 198 Ariz. 467, ¶¶ 10, 29, 11 P.3d 1006, ¶¶ 10, 29. The court found that Aranda's right to receive benefits was a substantive right that had become vested when the award became final, which had occurred before the statutory change. *Id.* at ¶ 22, 11 P.3d 1006. As the court stated:

---

**6.** Griffin does not contend that retroactive application of § 13–904(A) violated any rights he might have had under the Second Amendment to the United States Constitution, so we do not address that issue.

The Legislature "may certainly enact laws that apply to rights vested before the date of the statute," [but] "[s]uch laws ... may only change the legal consequences of *future* events." *San Carlos*, 193 Ariz. at 205, 972 P.2d at 189. But we are not dealing here with future events. The claimants must have the opportunity to avert the loss of benefits. The last moment this would be possible, in the context of conviction and incarceration, is the date of the criminal offense.

*Id.* at ¶ 28, 11 P.3d 1006. Similarly, retroactive application of § 13–904(A)(5) to Griffin's 1992 conviction means that the last moment he could have acted to avoid the loss of his constitutional right to possess a firearm was the date he committed his 1992 offense.

■ ¶ 23 As our supreme court stressed in *Zuther*, the critical issue in retroactivity analysis is "identify[ing] the 'completed event,'" because the legislature certainly has the power to enact laws that affect the legal consequences of future events. 199 Ariz. 104, ¶ 15, 14 P.3d 295, ¶ 15. And, "'[a] statute is not necessarily retroactive because it relates to antecedent facts.'" *Id.* at ¶ 17, 14 P.3d 295, *quoting Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250, 508 P.2d 324, 326 (1973); *see also Jordan v. State*, 56 S.W.3d 326, 333 (Tex.Ct.App.2001). But, here, retroactive application of § 13–904(A)(5) and the amended definition in § 13–3101(A)(6)(b) does more than relate to the antecedent fact of Griffin's 1992 felony conviction; it "ma[kes Griffin] a felon whose right to possess a firearm was suspended." *Olvera*, 191 Ariz. at 77, 952 P.2d at 315; *cf. Murray*, 194 Ariz. 373, ¶ 5, 982 P.2d 1287, ¶ 5 ("[T]he application made in the present case is retroactive rather than prospective because it would change the meaning of the statute as applied to someone like Defendant, who was sentenced before the statutory changes were enacted."). As applied to Griffin through § 13–3101(A)(6)(b), § 13–904(A)(5) alters the legal consequence of his 1992 conviction. Here, the "completed event" must be the conviction for his 1992 offense, because that conviction is what the state used throughout this prosecution as having suspended Griffin's right to possess a firearm, thus making him a prohibited possessor.[7] The future event of possessing a gun or firearm would not have been prohibited but for the retroactive application of § 13–904(A)(5).

■ ¶ 24 Accordingly, Griffin's right to possess a firearm, which was legally unaffected by his 1992 conviction, must be classified as a vested, substantive right. Consequently, we hold that retroactive application of § 13–904(A)(5), which suspended that right, violated the mandate of § 1–244 and, therefore, cannot support Griffin's conviction. *See San Carlos*, 193 Ariz. 195, ¶ 15, 972 P.2d 179, ¶ 15.

¶ 25 In so holding, we disagree with the state's contention that *Olvera* effectively disposes of Griffin's § 1–244 claim. In *Olvera*, this court briefly addressed § 1–244, recognizing the principle that a law is retroactive if it alters the legal consequences of acts completed before its effective date. 191 Ariz. at 76, 952 P.2d at 314; *see also Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360 (1987). But the court in *Olvera* primarily focused on whether the defendant's prohibited possessor conviction violated the ex post facto prohibition and did not differentiate that analysis from the retroactivity analysis required under § 1–244. As noted above, those issues differ. In addition, the court in *Olvera* apparently viewed the

---

7. We acknowledge, however, that other courts in analogous cases (including *Olvera*) have viewed the relevant "event," at least for ex post facto purposes, as the defendant's post-amendment possession of a firearm rather than the defendant's prior conviction. *See, e.g., Mills*, 8 Cal. Rptr.2d at 314 ("[T]he new statute only applies to an event occurring after its effective date, i.e.[,] defendant's possession of a shotgun six months after the statute became effective. The event, possession of a shotgun by a felon, occurred *after* the effective date of the statute, and the 1989 amendment was not retroactive."); *Peters*, 622 N.W.2d at 925 ("In this case, the event, possession of a firearm by a person convicted of a felony, took place after the effective date of the amendment, and the amendment was not retroactive."); *Jordan*, 56 S.W.3d at 332–33 ("because the criminal conduct the statute[] proscribes, possession of the firearm, occurred after the amendment of the statute, which changed only the circumstances under which a person is considered a felon," amended statute held not to be retroactive law).

defendant's subsequent possession of a firearm, rather than his prior conviction, as the relevant event for retroactivity purposes, stating that the 1994 amendments to §§ 13–904(A) and 13–3101 had not been retroactively applied in that case because they only "punish[ed] conduct that occurred after the effective date of the amendments." 191 Ariz. at 76, 952 P.2d at 314.

¶ 26 We disagree with that conclusion and find support for our contrary holding in analogous cases applying § 1–244 in the criminal context. In *Murray*, our supreme court held that a defendant's parole eligibility was a substantive right that had to be determined by the law in effect at the time of the offense. 194 Ariz. 373, ¶ 6, 982 P.2d 1287, ¶ 6. Thus, legislative changes to the parole eligibility laws could not be applied retroactively to a defendant who had committed an offense before those changes. *See id.* at ¶ 5, 982 P.2d 1287. As Justice Martone commented: "In short, the legislature can correct for the future, but not for the past." *Id.* at ¶ 11, 982 P.2d 1287 (J. Martone, concurring).

¶ 27 In *State v. Beasley*, 198 Ariz. 559, ¶¶ 8–9, 12 P.3d 234, ¶¶ 8–9 (App.2000), Division One of this court held that retroactive application of a statute that changed the defendant's status to that of " 'chronic felony offender' " was impermissible because it unlawfully "abrogate[d]" the defendant's "substantive right" under the version of the statute in effect at the time he committed the offenses in his previous juvenile adjudications to have those adjudications "used against him only in juvenile court." We find *Beasley* particularly persuasive because there, as in this case, the defendant faced "immediate consequences as a result of the retroactive application." *Id.* at ¶¶ 18–19, 12 P.3d 234. Regardless of whether Griffin ever picked up a weapon again, retroactive application of § 13–904(A)(5) suspended his substantive,

vested right to possess a firearm. *Cf. Mills*, 8 Cal.Rptr.2d at 321 (Timlin, J., concurring and dissenting) (impermissible "burden existed as soon as the amendment went into effect—and operated so as to impose an increased disability on convicted felons such as defendant *whether or not* they possessed any such [fire]arm and whether or not they ever were convicted of the same"). Indeed, immediately upon the governor's approval [8] of the 1994 statutory amendments, Griffin was in violation of the law if he "possess[ed]" [9] a gun or firearm, even if he engaged in no further criminal conduct. §§ 13–904(A)(5), 13–3101(A)(6)(b).

¶ 28 Moreover, the court in *Beasley* distinguished *Shane B.*, in which retroactive application of a statute adjudicating the juvenile a "first time felony offender" for offenses committed before the statute's enactment offended neither § 1–244 nor the ex post facto prohibition. 198 Ariz. 559, ¶¶ 12–16, 12 P.3d 234, ¶¶ 12–16. In *Shane B.*, our supreme court held that designation of a juvenile as a "first time felony juvenile offender" was procedural and that the juvenile did not "presently lose any enumerated right or privilege as a result" of that designation because he would only face consequences arising from that designation if he reoffended. *Id.* at ¶¶ 13, 15, 16, 7 P.3d 94; *see also State v. Yellowmexican*, 142 Ariz. 205, 207, 688 P.2d 1097, 1099 (App.1984) (stiffer penalty for third offense of driving under the influence of an intoxicant, committed after change in law creating increased penalty for third offense, did not violate ex post facto prohibition because, but for third offense, there would be no punishment beyond that imposed for first two). Absent any reoffense, the statutory changes at issue in both *Shane B.* and *Yellowmexican* had no effect on the legal conse-

---

8. The amendments became effective upon the governor's approval because they were enacted as an emergency measure. *See* Ariz. Const. art. IV, pt. 1, § 1(3); *Industrial Comm'n v. Frohmiller*, 60 Ariz. 464, 475, 140 P.2d 219, 223 (1943).

9. As the trial court instructed the jury, " '[p]ossess' means knowingly to have physical possession or otherwise to exercise dominion or control over property." A.R.S. § 13–105(30); *see also*

*State v. Chabolla–Hinojosa*, 192 Ariz. 360, ¶ 13, 965 P.2d 94, ¶ 13 (App.1998) ("One who exercises dominion or control over property has constructive possession of it even if it is not in his physical possession."); *cf. State v. Young*, 192 Ariz. 303, 965 P.2d 37 (App.1998) (upholding conviction for knowingly possessing prohibited weapon found under defendant's bed during unrelated search).

quences of the prior offenses in those cases.[10]

¶29 Like Beasley and unlike Shane B., however, Griffin suffered "immediate and significant consequences" as a result of the retroactive application of § 13–904(A)(5) to him. *Beasley*, 198 Ariz. 559, ¶19, 12 P.3d 234, ¶19; *cf. Saucedo v. Superior Court*, 190 Ariz. 226, 229, 946 P.2d 908, 911 (App. 1997) (retroactive application of automatic transfer provision to juvenile's offense committed before enactment of provision impermissible because it immediately deprived juvenile of eligibility to be tried in juvenile court). The retroactive application suspended Griffin's substantive and vested Arizona constitutional right to possess a firearm and, thus, impermissibly " 'attach[ed] new legal consequences to events completed before [the amended statute's] enactment." ' *San Carlos*, 193 Ariz. 195, ¶15, 972 P.2d 179, ¶15, *quoting Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229, 255 (1994). Retroactive application of § 13–904(A)(5) to Griffin's 1992 conviction, on which his current conviction was based, violates § 1–244.[11] *See id.* Accordingly, Griffin's conviction as a prohibited possessor under § 13–3102(A)(4) must be vacated.

## II. Restitution Award

¶30 Although Griffin was acquitted of cruel mistreatment of an animal for having shot Lumia's dog, the trial court, over Griffin's objection, ordered him to pay restitution for veterinary and mileage costs Lumia had incurred in treating the animal. The trial court reasoned that restitution was appropriate because the dog's injury had flowed from and was a foreseeable result of Griffin's prohibited possession of the shotgun.

¶31 As Griffin contends, and the state concedes, the trial court abused its discretion in ordering him to pay restitution. *See State v. Adams*, 189 Ariz. 235, 238, 941 P.2d 908, 911 (App.1997) (restitution order reviewed for abuse of discretion). "A court may impose restitution only on charges for which a defendant has been found guilty, to which he has admitted, or for which he has agreed to pay." *State v. Garcia*, 176 Ariz. 231, 236, 860 P.2d 498, 503 (App.1993); *State v. Whitney*, 151 Ariz. 113, 114, 726 P.2d 210, 211 (App.1985). Although Griffin admitted having shot the dog, he claimed he had done so lawfully to protect his livestock; thus, he did not admit having committed an offense. The jury did not find otherwise, and Griffin did not agree to pay restitution. In any event, because we vacate his prohibited possessor conviction, we need not consider whether restitution was appropriate based on that conviction. Accordingly, we also vacate the restitution award.

## DISPOSITION

¶32 Griffin's conviction as a prohibited possessor and the trial court's restitution order are vacated.

ESPINOSA, C.J. and DRUKE, P.J., concurring.

---

10. Similarly, Arizona's sentence enhancement statute, A.R. S. § 13–604, does not impose additional, immediate legal consequences on prior convictions but, rather, merely affects the consequences of future criminal conduct, albeit informed by the status that arose from prior convictions. *See State v. Allie*, 147 Ariz. 320, 326, 710 P.2d 430, 436 (1985) (upholding mandatory life sentence for defendant convicted of felony involving use of deadly weapon or dangerous instrument while on probation for prior felony conviction); *State v. Cocio*, 147 Ariz. 277, 284, 709 P.2d 1336, 1343 (1985) (same); *cf. State v. Newton*, 200 Ariz. 1, ¶5, 21 P.3d 387, ¶5 (2001) (legislature may alter penalty for future crimes).

11. Because we vacate Griffin's conviction on that ground, we need not address his argument that the trial court erred in failing to instruct the jury on his justification defense.